Robert D. NEILSON, Appellant,

v.

Judith NEILSON, Appellee.

No. S–6209.

Supreme Court of Alaska.

April 19, 1996.

---

Robert D. Neilson, New Zealand, pro se.

Judith Imlach, Anchorage, pro se.

Before RABINOWITZ, MATTHEWS and EASTAUGH, JJ.

## OPINION

RABINOWITZ, Justice.

## I. INTRODUCTION

This appeal raises two issues, both relating to child support: (1) whether the superior court erred in denying a non-custodial parent's Civil Rule 60(b) motion for relief from a child support order; and (2) whether the superior court erred in modifying the non-custodial parent's child support obligation under Civil Rule 90.3.

## II. FACTS AND PROCEEDINGS

Robert Neilson and Judith Imlach, formerly Judith Neilson, were married in Anchorage in 1983. They had two children: Zachary David Neilson, born April 17, 1984, and Aislinn Bridget Neilson, born April 14, 1986. Robert filed for divorce in May 1987, and in April 1988, the superior court granted custody of the children to Judith and ordered Robert to pay child support. Robert moved to California after filing for divorce and resided there through the time that he filed this appeal. Judith and the children have remained in Alaska.

The parties' original divorce decree provided that Robert's child support obligation would be the greater of $40 per month per child or 27% of his average monthly income. The Child Support Enforcement Division (CSED) calculated Robert's child support obligation to be $227 per month based on his monthly income. Under the Uniform Reciprocal Enforcement of Support Act (URESA), Robert was also subject to a concurrent California child support order in the amount of $234 per month.

In October 1989, after Robert contacted the CSED inquiring about child support arrearages and the effect of the two child support orders, the CSED responded to Robert stating:

> Because of the complications involved in keeping two separate orders, one based on 90.3 in Alaska and the other one in California set by the California courts, our client [Judith] requested that we accept whatever the California courts decided regarding

child support amounts. Effective March 1, 1989, this is what we have done.

Thereafter, on July 24, 1990, the CSED filed a motion in the superior court of Alaska to modify child support. Specifically, the motion, supported by an affidavit and memorandum of law, requested that Robert's support obligation be increased to $368 per month. Robert received notice of Judith's motion and hired counsel to represent him. On September 29, 1990, the superior court granted Judith's motion and ordered Robert to pay $368 per month.

Robert then filed a Motion for Reconsideration, an Opposition to Motion for Modification of Child Support, and a Motion for Evidentiary Hearing, which Judith joined. Robert's principal contention was that the CSED improperly denied some of his business expenses when it calculated his Rule 90.3 support obligation. The superior court granted both of Robert's motions. Robert's attorney had filed a Motion to Withdraw with Cause, which the superior court granted. Before withdrawing, Robert's counsel sent him a letter stating that the "signed Order for Evidentiary Hearing ... will need to be calendared by your new attorney." Though the record indicates that Robert hired a new attorney, Robert notes that his new attorney "left the United States promptly after his name appeared on the Substitution of Counsel, and never did anything on Robert's behalf." Consequently, since neither Robert nor his counsel followed up on his previously granted motions, the superior court's September 29, 1990 order stood undisturbed.

In May 1993, after more than a two year hiatus in proceedings, Robert, appearing *pro se*, filed a Civil Rule 60(b) motion for relief from the superior court's 1990 order requir-

ing him to pay $368 per month. Judith filed a response to Robert's motion and a cross motion to modify child support. The superior court ordered both parties to file updated child support affidavits, recent tax returns, and pay stubs, and set the case for hearing before a Master.

After hearing evidence, the Master issued a report recommending that Robert's Civil Rule 60(b) motion for relief be denied and Judith's motion to modify child support be granted. After he was granted an extension of time, Robert filed his objections to the Master's Report, and Judith replied to his objections. By order dated January 4, 1994, the superior court approved the Master's report, denied Robert's motion, and ordered Robert to pay modified child support in the amount of $535.01 per month.

On January 7, 1994, apparently before receiving notice of the superior court's order, Robert filed motions for leave to File Erratum, to Reject Master's Report, and to Grant a Hearing. The superior court denied these motions. Robert appeals the superior court's denial of his Civil Rule 60(b) motion, and his January 7, 1994 motions, and its grant of Judith's motion to modify child support.

## III. *DISCUSSION*

### A. *The superior court did not err in denying Robert's Civil Rule 60(b) motion.*[1]

Robert's motion for relief from the order modifying his child support obligation from $227 per month to $368 per month was not filed until May 1993, over two years after Robert received notice of it. Accordingly, his motion is limited to grounds (4), (5) and (6) of Rule 60(b).[2]

---

**1.** We review the superior court's denial of Robert's motion for Rule 60(b) relief for an abuse of discretion, which exists if we are "left with the definite and firm conviction on the whole record that the trial judge has made a mistake." *Gregor v. Hodges*, 612 P.2d 1008, 1010 (Alaska 1980) (citation omitted).

**2.** Alaska Civil Rule 60(b) provides in part:

On motion and upon such terms as are just, the court may relieve a party ... from a[n] ... order ... for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;
(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the

■ Under Rule 60(b)(4), Robert seems to argue that the Alaska Superior Court order permanently raising support to $368. is void because the California URESA order supersedes the pre-existing Alaska order. In this respect, he observes that "[h]e cannot reasonably be expected to serve or satisfy two masters giving different instructions." To properly address this claim, a short discussion of the URESA is helpful.

The original version of URESA, as adopted in Alaska in 1953, contained a provision which explicitly permitted the concurrent existence of more than one valid, binding order of support. The passage was found in section 30 of the 1950 version of the uniform act, and it remained in force in Alaska in substantially the same form until January 1, 1996. It read: 1995 SLA Ch. 57, §§ 21 & 28.

> An order of support issued by a court of this state, when acting as a responding state, *does not supersede* a previous order of support issued in a divorce or separate maintenance action, but the amounts for a particular period paid under either order shall be credited against amounts accruing or accrued for the same period under both.

AS 25.25.240 (emphasis added); *see also* URESA § 30, 9B U.L.A. 553, 600 (1987).

When URESA was amended in 1968 by the National Conference of Commissioners on Uniform State Laws, a similar, even more explicit provision replaced section 30—section 31 of the Revised Uniform Reciprocal Enforcement of Support Act (RURESA). Although RURESA was never adopted in Alaska, California enacted it in 1970. 1970 Cal.Stat. 1126. Section 31 as adopted in California reads:

> A support order made by a court of this state pursuant to this chapter *does not nullify* and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar provision of law, regardless of priority of issuance, *un-less otherwise specifically provided by the court.* Amounts paid for a particular period pursuant to a support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under a support order made by the court of this state.

Cal.Fam.Code § 4840 (emphasis added).

Given that the California URESA order in this case did not explicitly modify, nullify, or supersede the pre-existing Alaska support order, we conclude that Civil Rule 60(b)(4) is inapplicable since the September 29, 1990 Alaska order of support was not superseded and thus was not void.

■ Under Rule 60(b)(5), Robert apparently argues that the order "has been satisfied, released, or discharged, or a prior [order] upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the [order] should have prospective application." Alaska R.Civ.P. 60(b)(5). To this effect, Robert states:

> By breaching her October 16, 1989 agreement nine months after it was made, and by continuing to have California determine and collect child support from Robert, Judith is estopped to deny that the September 29, 1990 Order is void.

The "October 16, 1989 agreement" referred to is the letter the CSED sent to Robert stating that Judith "accept[s] whatever the California courts decided regarding child support amounts." Judith argues that the intention of the letter was to relieve Robert of the necessity of providing income information every six months. In a May 17, 1993 letter to the CSED, Judith also explained her motivations as follows:

> In June 22, 1989, a URESA order was entered in California ordering support of $234.00 per month. . . . I was informed by CSED that they would no longer be making the adjustments to the ongoing support every six months as the Divorce Decree

judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the date of notice of the judgment or orders as defined in *Civil Rule 58.1(c).*

ordered. I would have to request a modification through the courts to have the amount changed. At the time, I felt that the Alaskan and the California URESA orders were close enough in amounts that it would be easiser [sic] to go with the California amount. I later realized that there was a considerable difference between the Alaskan and Californian Child Support Guidelines, so in mid 1990, I requested a modification of my Alaskan order.

Whether the parties had an agreement is not determinative. What is determinative is the fact that the parties never precluded future modifications. Therefore, we hold that Robert failed to meet the requirements of Rule 60(b)(5) in that the letter of October 1989 did not constitute a release, satisfaction, or discharge of the superior court's support order of September 29, 1990.

 Robert also argues that he is entitled to relief under Rule 60(b)(6). As we stated in *O'Link v. O'Link*, 632 P.2d 225, 229 (Alaska 1981), "Clause (6) is reserved for extraordinary circumstances not covered by the preceding clauses." Robert notes several personal factors—bankruptcy, poverty, medical conditions, and his attorneys' performance—to support his claim for relief under Rule 60(b)(6). However, these factors, and especially any neglect on his attorneys' part, fall under the first clause of the Rule 60(b) umbrella: mistake, inadvertence, surprise or excusable neglect. However, since Robert made his motion for relief more than one year after the order was entered, he is not entitled to relief under Rule 60(b)(1). Accordingly, we conclude that the superior court did not abuse its discretion in denying Robert's motion for relief under Rule 60(b)(6).

### B. *The superior court erred in accepting the Master's clearly erroneous child support calculation.*[3]

 After hearing testimony and receiving evidence, the Master concluded that Robert's modified support obligation should be $535.01 per month. In arriving at this figure, the Master disallowed approximately $7,020 worth of claimed expenses submitted by Robert. Robert argues that the Master, as well as the superior court by virtue of its adoption of the Master's report, erred in two ways: (1) as a matter of law, it was improper for the Master to disallow business expenses that are otherwise allowable under the Internal Revenue Code; and (2) in any event, the Master's factual findings were clearly erroneous.

 In considering Robert's claim that the Master improperly disallowed over two-thirds of his claimed business expenses, the commentary to Civil Rule 90.3 is instructive:

Self–Employment Income. Income from self-employment . . . includes the gross receipts minus the ordinary and necessary expenses required to produce the income. Ordinary and necessary expenses do not include amounts allowable by the IRS for the accelerated component of depreciation expenses, investment tax credits, or other business expenses determined by the court to be inappropriate.

Civil Rule 90.3 Commentary, III(B).[4] Robert argues that lacking any guidelines for what constitutes an "ordinary and necessary" expense, or for what constitutes an "inappropriate" expense, the superior court should accept those deductions which the IRS allows self-employed persons pursuant to the Internal Revenue Code, provided there is no evidence of fraud. In this vein, Robert argues that there should be a rebuttable presumption that business expenses reported to the

---

**3.** Civil Rule 53(d)(2) provides that the superior court "shall accept the master's [factual] findings unless clearly erroneous." However, the master's conclusions of law and recommendations are not controlling, and the superior court is free to disregard them. *Headlough v. Headlough*, 639 P.2d 1010, 1012 (Alaska 1982). Also, "[c]hild support determinations are within the broad discretion of the trial court and will only be reversed when we are left with a definite and firm

conviction that a mistake has been made." *Zimin v. Zimin*, 837 P.2d 118, 123 n. 8 (Alaska 1992) (citation omitted).

**4.** "While this court has not officially adopted or approved the commentary, [it has] relied on it for guidance in determining adjusted annual income for self-employed parents." *Eagley v. Eagley*, 849 P.2d 777, 779 (Alaska 1993).

IRS are ordinary and necessary for the production of income for purposes of child support determinations.

We have addressed the question of whether it is proper for a parent to deduct business expenses in the context of determining income for purposes of Rule 90.3. In *Ogard v. Ogard*, 808 P.2d 815 (Alaska 1991), this court, while recognizing that total deference to a parent's tax returns may pose problems, nonetheless held that straightline depreciation is an allowable deduction under Civil Rule 90.3:

> Furthermore, while we acknowledge the court's concerns regarding the accuracy of an income tax return as a reflection of true income, the technique the court employed did not allow sufficient recognition of appropriate business expenses.... Depreciation is a means of reflecting on an annual basis the costs of capital equipment. Such costs are real and should not be disregarded unless it appears that equipment was acquired in order to avoid or reduce the obligor's child support obligation.

*Id.* at 819. *See also Eagley*, 849 P.2d at 781 ("We therefore hold that in the context of a Civil Rule 90.3 adjusted income determination, the superior court should allow, as ordinary and necessary business expenses, a deduction for straightline depreciation of the parent's business' real estate.").

This court also addressed the issue of claimed business expenses in *Coghill v. Coghill*, 836 P.2d 921 (Alaska 1992):

> [T]he [superior] court disallowed deductions for certain expenses relating to use of an automobile, work clothing, meals, a home office, and imputed taxes.... In our view [appellant] misunderstands the superior court's denial of his various deductions. The court was not implying that his expenses ... were not legitimate business expenses. Rather, the court recognized that such expenses reduced [appellant's] living expenses. Here, where the meals were consumed by [appellant] and where the type of clothing purchased by

[appellant] was not significantly different from the clothing purchased by most Alaskans, the superior court properly disallowed deductions for these and other expenses for the purposes of computing Civil Rule 90.3 income.

*Id.* at 926. Though Judith takes this to mean that Rule 90.3 "limits business expenses beyond what is allowed by the IRS," a closer reading of *Coghill* reveals that the holding was fact specific. *Id.* at 926 n. 6.

The distinguishing factor in *Coghill*, as illustrated above in reference to clothing, was that the disallowed "business" expenses would have been otherwise incurred. *Id.* That is, in Rule 90.3 parlance, the expenses were not "ordinary and necessary expenses required to produce ... income." Rule 90.3 Commentary, III(B). In *Coghill*, the superior court made specific findings that the claimed expenses were in fact personal, a distinction lacking in the case at bar. *Id.*

In *Zimin*, 837 P.2d at 118, this court held that a parent's contribution to a "Capital Construction Fund" was not an allowable deduction for Rule 90.3 purposes. *Id.* at 122–23. Significantly, the $25,000 contribution at issue, unlike accelerated depreciation, is not the type of expense that the commentary expressly disallows. Furthermore, under federal law, the contribution was deductible from the parent's reportable income. *Id.* at 120 & n. 2. Nonetheless, we held that "[s]ince the goal of the Rule 90.3 guidelines is to obtain a realistic estimate of an obligor's adjusted annual income, these funds should be included in [the obligor's] 1990 income for the purposes of calculating child support. To hold otherwise would severely understate [appellant's] most current income figures." *Id.* at 123.

Two propositions can be gleaned from these decisions: (1) this court, in contrast to Robert's suggestion, has refrained from adopting a bright line test that all expenses recognized by the IRS are similarly recognized under Rule 90.3;[5] and (2) instead of a

---

5. As one commentator has stated, "when determining which business deductions to allow for the purposes of determining child support, a court is not bound by the tax laws." 2 Jeff

Atkinson, *Modern Child Custody Practice* § 10.23, at 525 (1986). Similarly, as the Delaware Supreme Court held:

hard and fast rule, the determinative factor as to whether a claimed expense is deductible under Rule 90.3 is whether it is an "ordinary and necessary expense[ ] required to produce the income" and whether the allowance of such an expense would defeat the goals of Civil Rule 90.3.

■ Thus, insofar as Robert's claimed expenses are necessary for producing his income, they are deductible under Rule 90.3. In this light, a parent's tax return serves two functions. First, as evidence, it indicates whether a claimed expense was in fact incurred. Second, it may support a parent's claim that a given expense is ordinary and necessary. It does not, however, serve as a proxy for the necessary determination of whether a claimed expense was ordinary and necessary, though there will be significant overlap.

■ In the case at bar, as we previously noted, the Master disallowed over two-thirds of Robert's claimed business expenses. In so doing, the Master deferred to Judith's testimony at hearing and accepted her objections *in toto*. As the Master stated in his report:

> Then [Judith] took his claimed business expenses for that eight month period and did her own review of their applicability. Her testimony went through each of his claimed expenses. Her testimony was convincing that his claim of $10,334.98 in business expenses for the eight month period was excessive. She was persuasive that only $3,315.62 of his claimed business

expenses would be applicable to the child support computation.

Judith's "review" of Robert's claimed expenses consisted of an analysis of Robert's banking records as well as the underlying components of each expense item. Some of her assertions were supported. She noted that Robert claimed $179 for dues and publications expenses, which included a subscription to "Surfer Magazine," and that Robert claimed hundreds of dollars for "professional" expenses that actually consisted of a debt for legal services stemming from his personal bankruptcy. However, most of Judith's assertions amounted to little more than her unsubstantiated opinion as to what constituted a valid expense. For instance, she testified that Robert's claimed rental expense of $3,552.50 should not be allowed "because that is not an allowable expense for self-employed people who work out of their home." [6] Judith "disallowed" Robert's claimed expenses for repairs and maintenance as well as his utility expenses on the same grounds. As for expenses related to Robert's vehicle, the Master endorsed Judith's seemingly arbitrary claim that only one-half of such expenses should be allowed since Robert also uses his vehicle for personal use.[7]

On this record, it is clear that the Master erred. For reasons discussed above, Robert's expenses, insofar as they were ordinary and necessary, should be allowed under Rule 90.3. Though deductions for a "home office" should be subject to scrutiny,[8] they should

---

> [S]ome aspects of the tax laws are designed to encourage the growth in business enterprises, whereas the child support laws are necessarily concerned with the welfare of the children. When the two approaches to net income conflict, the Family Court is free to depart from tax law accounting, but in doing so the court must show that the departure is reasonable and fair and practical under all the circumstances.

*R.T. v. R.T.*, 494 A.2d 150, 154–55 (Del.1985); *see also Otte v. Otte*, 368 N.W.2d 293, 297 (Minn. App.1985).

6. Concerning his work at home, Robert testified:
 I do all my work out of the home.... I've been in three locations to work ... and every one of them, the reason I moved into them to begin with was so that I had room to set up an office. My office is exclusively used for work. My customers come here. The place I just

moved into, I had extensive remodeling work done so that I have a place where my clients can come and visit. *It is based on the square footage of the office compared to the total square footage of the house.* Otherwise, I would be paying rent somewhere else to have an office. I wouldn't be able to work without a separate area to work. I wouldn't be able to earn income.
(Emphasis added.)

7. Again, Robert's testimony is telling:
 The truck was based on my actual business mileage, and I took 69% of all vehicle expenses, including the interest. Prior to owning the truck, I took the standard deduction based on the mileage.

8. As one commentator has stated:
 The deduction of depreciation and other business expenses is a common issue when a par-

not be categorically disallowed. Accordingly, to disallow all deductions for rent, utilities, and repairs, when the record clearly indicates that such expenses occurred and were necessary, is error.

■ Unlike *Coghill*, there is no evidence here that Robert's claimed rental and vehicle related expenses would have been incurred in any event. In fact, the only evidence presented indicates that these expenses would have been avoided but for Robert's income producing activities. The basis for holding that Robert is entitled to a rental deduction for his "home office" is not that the IRS recognizes such a deduction. Instead, the basis is that the record clearly demonstrates that his allocated rental expense is ordinary, necessary, and reasonably calculated.[9] Similarly, the Master's adoption of Judith's arbitrary allotment of 50% of Robert's vehicle expenses, in light of the evidence to the contrary, is in error. Accordingly, Robert's rent and vehicle related expenses should be held to be deductible.[10]

In addition to erroneously determining Robert's allowed business expenses, the Mas-

> ent owns a closely held company. Like salary, business expenses can be manipulated to affect net income, and some business deductions may have a minimal effect on the business owner's cash flow.
>
> 2 Atkinson, § 10.23, at 525.

**9.** In *Nass v. Seaton*, 904 P.2d 412 (Alaska 1995), we said:

> In *Eagley* we rejected the commentary's categorical disallowance of all depreciation of real estate, and held that straightline depreciation of business real estate was appropriate. *Eagley* thus requires reversal of the superior court's disallowance of straightline depreciation for that portion of the residence which Fred used in his machinery business. This aspect of the appeal is therefore reversed and remanded with instructions to calculate straightline depreciation limited to the areas of the residence that are in fact used in the conduct of Fred's machinery business.

*Id.* at 417. Robert's disallowed rent and vehicle expenses were calculated in conformity with this court's directive in *Nass*.

**10.** Specifically, Robert's rent ($3,553), insurance ($87), repair ($144), utility ($205), and vehicle ($502) expenses were improperly disallowed. Also improperly disallowed is $50 in professional dues that Judith acknowledged at hearing as being legitimate, but nonetheless were disal-

ter erred in his allocation of taxes under Rule 90.3(a)(1)(A), which states:

> (1) Adjusted annual income as used in this rule means the parent's total income from all sources minus:
>
> (A) mandatory deductions such as federal income tax, social security tax, mandatory retirement deductions and mandatory union dues.

In short, the Master made two additional errors: (1) he computed Robert's social security tax at 7.65%, though the rate for self-employed persons is 15.3%; (2) he failed to consider Robert's State of California income taxes, an expense no less mandatory than the others listed in Rule 90.3(a)(1)(A).

Finally, Robert also claims that the Master erred in computing the income side of his support calculation. Specifically, he argues that it was error for the Master to project his income for eight months of 1993 for the whole year, since he earns less money from September to December. Though Robert did present some evidence that the basis for the Master's projection was flawed, we conclude that the Master's proration of Robert's income was not clearly erroneous and it does not reflect an abuse of discretion.[11] *See, e.g.,*

lowed by the Master. Thus, Robert's improperly disallowed deductions total $4,541. As for his other disallowed expenses (totaling $2,529), Judith did present evidence which arguably supports the Master's otherwise cursory findings; that is, the Master's findings regarding these expenses are not clearly erroneous.

**11.** In his motion to file an Erratum and Addendum, Robert states:

> The "addendum" part is added to show the factual errors made by the master in calculating Mr. Neilson's gross income, and while those errors did not use his incorrect analysis of Mr. Neilson's gross income *directly* in recommending an increased child support obligation, Mr. Neilson believes that incorrect analysis and resulting repeated suggestions that Mr. Neilson was less than credible affected the master's blind acceptance of the former Mrs. Neilson's disallowance of deductions from Mr. Neilson's gross income [sic].

Thus, Robert's principal concern was not that the Master erred in analyzing his proffered income information, but rather that the Master's errors led it to conclude that Robert was not credible, and thus served as the basis for disallowing his claimed expenses. However, any concerns on Robert's part have been addressed since, as discussed above, it has been shown that the Master improperly disallowed some of his expenses.

*Coghill,* 836 P.2d at 926 ("the superior court properly exercised its discretion and, on the basis of the most complete evidence before it, chose the best indicator of [appellant's] future earning capacity"); *Renfro v. Renfro,* 848 P.2d 830, 833 (Alaska 1993) ("This court has approved of an averaging approach when a parent's future earnings are uncertain.").

### V. CONCLUSION

The superior court properly denied Robert's Civil Rule 60(b) motion for relief from the superior court's order dated September 29, 1990. However, in granting Judith's cross motion for modification of child support under Civil Rule 90.3, the superior court erred in adopting the Master's report since the Master's underlying factual findings concerning Robert's business and tax deductions are clearly erroneous. Accordingly, the superior court is AFFIRMED in part and REVERSED in part. The superior court's modification order dated January 7, 1994 is VACATED and REMANDED for proceedings consistent with this opinion.[12]

12. Given this disposition, Robert's contention that the superior court improperly denied his Motion to File Erratum and Addendum to Objections to Master's Report, and for Order Rejecting Master's Report and Granting Evidentiary Hearing is rendered moot. Similarly, Robert's other listed points on appeal are either moot, meritless, or have been expressly waived.