**Ronald G. GILLUM, Appellant,**

v.

**L & J ENTERPRISES, INC., d/b/a Paceco Warehouse, Appellee.**

No. S–9669.

Supreme Court of Alaska.

Aug. 24, 2001.

Brett von Gemmingen, Anchorage, for Appellant.

Patrick J. McKay, Law Offices of Patrick J. McKay, Anchorage, for Appellee.

Before FABE, Chief Justice, and MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Ronald Gillum suffered two industrial accidents. In the first, the descending door at a warehouse loading dock struck his head. Fifteen days later he fell from his semi-trailer. After Gillum sued the warehouse operator, a special master found the operator's negligence caused Gillum injury, found modest damages, and attributed forty percent of the responsibility to Gillum's negligence. The superior court accepted the findings and recommendations. We conclude that the special master did not clearly err (1) in finding that Gillum's warehouse head injury did not cause him to fall from his trailer and that Gillum was comparatively negligent; and (2) in discounting the testimony of Gillum's expert, having found factual inconsistencies between the expert's assumptions and Gillum's testimony. We therefore affirm.

## II. FACTS AND PROCEEDINGS

Ronald Gillum was a truck driver who delivered a load of groceries to Paceco Warehouse in Seward on November 24, 1993. While Gillum was helping Paceco employees unload his truck, the loading dock door dropped and struck Gillum's head. The Paceco employees had propped the door open with a two-by-four that was dislodged during the unloading process. Gillum did not immediately recognize the severity of his injury, and continued to help unload the pallets of groceries. After unloading was complete, Gillum drove his semi-truck back to Anchorage, and told his supervisor of the accident. Later that night, Gillum drove to Soldotna, experiencing extreme vision and balance problems on the drive. A friend took Gillum to the Soldotna emergency room, where Gillum presented with complaints of headache and neck pain. At the emergency room, Gillum denied that he had been knocked out or knocked down when the door struck his head. He reported feeling unsteady when walking and noted that his left eye had been twitching since the head strike. The emergency room doctor instructed Gillum not to drive or work for forty-eight hours, and diagnosed mild neck strain and closed-head trauma with a mild concussion.

Gillum spent an active weekend in Soldotna dating, playing pool, and dancing; he returned to Anchorage one to three days later. He visited Dr. Clarence Little on November 29 for follow-up care and to obtain a release to return to work. Dr. Little found a small tender swollen area on the top of the scalp just anterior to the occipital region. Gillum complained of lightheadedness, diarrhea, and feeling off-balance. At Gillum's request, Dr. Little faxed a work release to Gillum's employer on December 2.

Gillum's second accident occurred on December 9 while he was in Glennallen. He fell to the ground either after he slipped from his semi-trailer, or after he blacked out while climbing up and over the trailer. Gillum made his way to the Crossroads Medical Center in Glennallen, where he was diagnosed with a concussion and discharged with instructions to be seen at the emergency room in Anchorage. At the Anchorage emergency room Gillum received medication and instructions to rest and follow up with Dr. Little.

Gillum saw Dr. Little on December 13 for follow-up treatment. Dr. Little recommended neurological evaluation. Gillum has since seen many physicians and neuropsychologists for his resulting disabilities.

Gillum sued Paceco, operator of the warehouse where the descending loading dock door struck his head. By agreement the parties tried the matter before a special master who found that this accident did not cause the majority of Gillum's current medical problems. Gillum objected to the special master's findings. The superior court ap-

proved the special master's findings and recommendations over Gillum's objections. This appeal follows.

## III. DISCUSSION

### A. Standard of Review

The findings of a trier of fact will not be set aside unless they are clearly erroneous.[1] A finding is clearly erroneous only "when, although there may be evidence to support it, we are left with the definite and firm conviction on the entire record that a mistake has been committed."[2] Alaska Civil Rule 53(d)(2) instructs the superior court to accept a special master's factual findings unless they are clearly erroneous.[3] Any legal determinations made during this process are reviewed de novo.[4]

### B. The Record Supports the Special Master's Findings that the Paceco Garage Door Accident Did Not Cause Gillum's Long–Term Disability.

Gillum argues that his Seward head injury did not resolve in a few days, and that it caused his later fall in Glennallen. Paceco argues that the initial head strike caused a light concussion, but that Gillum had completely recovered from the accident within a week. It claims that Gillum's fall from his semi-trailer was caused by slipping and was not related to the warehouse accident. The special master found that neither the "Paceco incident nor its sequelae played any part in bringing about the injuries Plaintiff sustained on December 9." We conclude that the special master's findings on causation are well supported by the record.

The special master assumed that the Glennallen fall caused Gillum's long-term disability, and that the Seward head strike could only have been implicated in Gillum's disabilities if the head strike had caused the Glennallen fall. The special master prefaced his findings by saying "[s]ince the point of con-

tention in this exercise flows .from whether the Glennallen fall causally resulted from the Seward head strike, I intend to limit my findings to that issue and closely related topics."

Evidence in the record supports Gillum's argument that a blackout or dizzy spell caused the Glennallen fall. But there is also evidence in the record to support the special master's finding that it did not. While several of Gillum's health care providers opined that a syncopal episode[5] directly prior to the Glennallen fall would have been consistent with the head strike injury, none of them testified that syncope caused Gillum's Glennallen fall.

Dr. Paul Craig, a neuropsychologist, testified that he could not express an opinion as to the cause of Gillum's Glennallen fall. Dr. Glenn Ferris testified that it was not necessary for him to determine which of the two accidents may have played a causative factor in Gillum's disabilities. Dr. John Peacock noted that while Gillum's self-reported medical history attributed the Glennallen fall to a syncopal episode, he was not attempting to discern whether one accident caused the other. Ann Lisa Ver Hoef, Gillum's speech language pathologist, testified that it was not important for her to determine the cause of Gillum's injuries. Carol Jacobsen, Gillum's vocational counselor, testified that while she sent letters of introduction to many of Gillum's physicians, she based the facts noted in those letters on information collected from Gillum and from his medical records. Dr. Little testified that when he treated Gillum shortly after the Glennallen fall, Gillum reported not knowing if he had fainted, had a seizure, or just slipped and fell. Dr. Little noted that the cause of Gillum's fall was a "question of his recall." Other health care professionals simply relied on Gillum's medical history or self-reporting that syncope preceded the Glennallen fall.

---

1. See Kaatz v. State, 540 P.2d 1037, 1041 (Alaska 1975).

2. Id. (citation omitted).

3. See Neilson v. Neilson, 914 P.2d 1268, 1272 n. 3 (Alaska 1996).

4. See Lewis v. Lewis, 785 P.2d 550, 552 (Alaska 1990).

5. Dr. John Peacock testified that "[a] syncopal episode is sudden loss of consciousness."

Gillum argues that Dr. Tom Lang "stated that the initial door strike to Mr. Gillum's head was responsible for his second syncopal injury in Glennallen," and that syncope was likely caused by the Paceco head strike. Dr. Lang reports in his notes, under the heading "Impression," that

[i]t seems more likely than not that the initial door strike injury is responsible for his second syncopal injury in Glennallen. The timing is right for the delayed onset in closed head injury. It seems unlikely that Mr. Gillum would have suffered syncope in Glennallen had it not been for the initial headstrike which was significantly traumatic.

Significantly, Dr. Lang did not diagnose Gillum as having suffered syncope in Glennallen. Instead, he appears to have assumed, in reliance on Gillum's self-reported medical history, that syncope had occurred; having made that assumption, he was simply expressing an opinion about the cause of syncope. But the special master found that syncope had not occurred. We think he did not clearly err in so finding.

Gillum was alone when he fell from his semi-trailer. He was the only witness who testified based on first-hand information how the fall occurred. The special master found that Gillum's credibility was critical, and that discrepancies in his testimony negatively affected his credibility. The record supports these credibility findings. Gillum's early reports of the events leading to the Glennallen fall state that he slipped. At the emergency room, soon after the fall, Gillum denied "any loss of consciousness[,] blurred vision[,] or any neurodeficit." Although later medical reports would have supported a finding that a blackout caused the Glennallen fall, the special master did not clearly err by finding the initial reports of the incident to be more credible. The record does not suggest that a mistake has been made about whether the warehouse accident caused symptoms that contributed to the Glennallen fall.

Gillum argues that the special master erred by elevating an intervening force to the level of a superseding cause. Gillum argues that whether the Glennallen fall was a superseding or intervening cause is a question of law. He concludes that the Glennallen fall was an intervening cause, and that the special master erred by treating it as a superseding cause.

Gillum's working theory is that his Paceco warehouse head strike injury was severe enough to cause syncope fifteen days later, causing him to fall and suffer another concussion. This is also the theory he raised in his objections to the master's findings.[6]

Neither the superior court nor the special master relied on an intervening, superseding cause theory. The special master simply rejected Gillum's trial theory that the warehouse accident was so severe that it caused the Glennallen accident and additional injuries. The special master did not find that the Glennallen fall was an intervening or superseding cause of the injuries of which Gillum complained.

Gillum's argument that the special master elevated an intervening force to the level of a superseding cause originates in his argument that the evidence established that he suffered a syncopal event that caused him to fall from the trailer in Glennallen. Gillum claims that his warehouse injury caused him to suffer the syncopal event, and that the injuries he received when he fell from the trailer are therefore also attributable to Paceco. The special master found that the Glennallen fall was caused by Gillum slipping, and not by a syncopal episode. The record supports this finding. Because we conclude that it was not error to find that the Paceco injury did not cause the fall from the trailer, Gillum's sole theory on which he asserts error is factually unfounded. We therefore affirm the superior court's approval of the special master's causation findings.

C. *The Special Master Did Not Err in Finding that Gillum Was Forty–Percent Comparatively Negligent.*

■ The special master attributed sixty percent of the responsibility to Paceco's neg-

---

6. Gillum does not argue here and did not argue in his objections to the master's findings and recommendations that his extensive injuries are exclusively attributable to the Paceco warehouse accident. Gillum also has not argued that the Glennallen fall, even if not caused by a blackout or dizziness resulting from the warehouse accident, was a foreseeable event and that the injuries he suffered when he fell from the trailer must therefore also be attributed to Paceco.

ligence and forty percent to Gillum's negligence. He explained that this allocation reflected his finding that "although Plaintiff was negligent in his failure to keep an adequate watch for his own safety the greater negligence lay with Paceco for ... continuing to use a jury-rig expedient no matter how well it customarily performed." Gillum argues that this finding of comparative negligence imposes an undue "duty to anticipate that the landowner will act negligently, to search for this negligence, and to discover[ ] the negligence prior to injury." Paceco argues that the special master's finding is supported by the testimony that established that Gillum continued to push the pallet even though he knew that the two-by-four had been knocked loose and that the door had fallen part-way.

■ Failure to discover a hazard can constitute comparative negligence.[7] The special master's finding of comparative negligence is not clearly erroneous. The evidence permits a reasonable person to find that Gillum was alerted to the hazard—the garage door had fallen partway and rested on top of the pallet of groceries. It also permits a finding that Gillum was warned not to push on the pallet, but continued to do so despite the warning. Gillum argues that the comparative negligence finding imposes an "unreasonable duty of agility." He does not, however, offer evidence that establishes that the finding is clearly erroneous.

We therefore affirm the superior court's approval of the special master's finding of comparative negligence.

D. *The Special Master Did Not Err in Disregarding the Testimony of Gillum's Expert Witness.*

■ Gillum's expert witness in biomechanics was Dr. Mariusz Ziejewski. He testified about the severity of the injury resulting from the head strike. The special master noted that "had I known Mr. Gillum was to describe the door/head strike in the manner he did (nearly vertically, resting on the head,

and no forward rotation of the skull) I would not have allowed the Doctor's testimony."

Gillum contends that the special master erred in concluding that Dr. Ziejewski based his conclusions on an incorrect location for the head strike, and therefore erred in disregarding Dr. Ziejewski's testimony. He asserts that the record demonstrates that the door struck him on the head "just anterior (forward) of the occipital region" and that Dr. Ziejewski based his conclusions "upon a door strike occurring at exactly the same spot." Paceco responds that the special master correctly disregarded Dr. Ziejewski's testimony because he assumed that the warehouse event occurred in a way that was not "substantially similar" to the way the event actually took place.

Dr. Ziejewski's conclusions regarding the severity of the injury depend on an assumption that Gillum's head rotated forward in a certain manner. Dr. Ziejewski testified that the severity of the injury would differ, based on the angle at which the garage door struck Gillum's head. Gillum testified that the garage door landed on top of his head while he was standing straight up, and that he simply shoved the garage door off the top of his head. When Gillum was asked, "[t]he door didn't push your head forward, it just hit you straight down, right?" he answered, "[a]s best I recall." Given Gillum's testimony about how the door struck his head, the special master did not clearly err in finding that the expert's assumptions about the mechanics of the accident were at odds with the facts as Gillum described them. The special master consequently did not err in choosing not to rely on the expert's testimony. We therefore affirm the superior court's approval of the special master's findings and recommendations.

IV. *CONCLUSION*

As to all issues, we AFFIRM the superior court's approval of the findings and recommendations of the special master.

---

7. *See McKean v. Hammond*, 445 P.2d 679, 682 (Alaska 1968) (holding that question of whether invitee "knew or should have known" of the dangerous condition was a question of fact).