**CARR–GOTTSTEIN PROPERTIES, LIMITED PARTNERSHIP,**
Appellant,

v.

**Ruth L. BENEDICT and Gerry L. Zeek, Appellees.**

No. S–10579.

Supreme Court of Alaska.

June 20, 2003.

---

1. 721 P.2d 1121 (Alaska 1986).

2. *State v. Coon*, 974 P.2d 386, 394 (Alaska 1999).

Dani Crosby and William S. Cummings, Ashburn & Mason, P.C., Anchorage, for Appellant.

No appearance by Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Chief Justice.

## I. INTRODUCTION

A lot owner violated a covenant in her subdivision by taking more than one year to finish construction on her lot. The covenant contained a flat-rate, per diem liquidated damages provision for covenant violations. The issue presented by this appeal is whether flat-rate, per diem liquidated damages can be charged for construction delays that vio-

late subdivision covenant regulations. We reverse the superior court and hold that such a clause is permissible in this case because the developer's liquidated damages clause attempts to address a situation where it would be difficult to ascertain actual damages or to reasonably forecast the damages likely to occur in the event of breach.

## II. FACTS AND PROCEEDINGS

Carr–Gottstein Properties developed the Southport Subdivision Addition No. 1 in Anchorage. Carr–Gottstein executed a Declaration of Covenants, Conditions and Restrictions (CC & R) that regulates the use of lots within the subdivision. One covenant in the CC & R requires owners of lots within the subdivision to complete any construction of a dwelling within one year.[1] A purpose of this one-year covenant is to protect the aesthetics of the subdivision. The CC & R contains a liquidated damages clause that provides a $25 daily fine for any violation of the CC & R.

Ruth Benedict owned Lot 15, Block 4 in the Southport Subdivision Addition No. 1 (Lot 15). On September 20, 1999, Benedict began construction on her lot. On October 31, 2000, Carr–Gottstein gave Benedict written notice that Benedict was in violation of the one-year construction limitation covenant.

Carr–Gottstein filed suit to require completion of the construction and for assessment of liquidated damages. Carr Gottstein moved for partial summary judgment on the question whether Benedict was in compliance with the covenant. Benedict opposed Carr–

Gottstein's motion and filed a cross-motion for summary judgment challenging the validity of the liquidated damages provision. The trial court granted both motions for summary judgment, finding that Benedict was not in compliance with the covenant but also that the CC & R's liquidated damages clause was impermissible because of our ruling in *Kalenka v. Taylor*.[2] Carr–Gottstein now appeals the granting of Benedict's motion for summary judgment.[3]

## III. STANDARD OF REVIEW

■■■ The general enforceability of flat-rate per diem liquidated damages clauses is a question of law. Whether a particular liquidated damages clause is validly applied is a mixed question of law and fact.[4] What legal test a court should apply in determining the validity of a liquidated damages clause is a legal issue.[5] Whether facts in a particular case meet the proper liquidated damages test is a factual determination. For questions of law, the standard of review is de novo; we adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[6] We review a court's factual determinations under the clearly erroneous standard.[7]

## IV. DISCUSSION

■■■ Generally, parties to a contract are free to stipulate in advance an amount "to be paid as compensation for loss or injury which may result in the event of a breach of the contract, and such stipulations are valid and enforceable."[8] However, such an advance stipulation may only provide compensation

---

1. This covenant is located in Article VII, Section 7.8 of the CC & R.

2. 896 P.2d 222 (Alaska 1995).

3. After the summary judgment motion, Matrix General, Inc. bought Lot 15 in a judicial foreclosure sale. Carr–Gottstein added Matrix General, Inc. as a defendant. Subsequently, Gerry Zeek bought the lot from Matrix General, Inc. The trial court then substituted Gerry Zeek as the real party in interest for Matrix General, Inc.

4. When there is a mixed question of law and fact, we will evaluate the legal and factual issues separately. *Wyller v. Madsen*, 69 P.3d 482, 485, (Alaska 2003); *see also Central Bering Sea Fisher-*

*men's Ass'n v. Anderson*, 54 P.3d 271, 277 (Alaska 2002); *Nickels v. Napolilli*, 29 P.3d 242, 246–47 (Alaska 2001).

5. *Central Bering Sea Fishermen's Ass'n v. Anderson*, 54 P.3d 271, 277 (Alaska 2002).

6. *Bennett v. Bennett*, 6 P.3d 724, 726 (Alaska 2000).

7. *Gillum v. L & J Enters.*, 29 P.3d 266, 268 (Alaska 2001).

8. Annotation, *Contractual Provision for Per Diem Payments for Delay in Performance as One For Liquidated Damages or Penalty*, 12 A.L.R.4th 891, 899 (1982).

for breach of the contract and may not serve as a penalty that punishes the breaching party.[9] Contractual penalties serve no positive purpose, which is why courts do not enforce them.[10] Courts must determine on a case-by-case basis whether a damages provision is a valid liquidated damages clause or an unenforceable penalty.[11]

■ We have instructed trial courts to employ a two-step test in making their determinations regarding the validity of liquidated damages clauses: "Liquidated damages clauses are proper ... where 'it would be difficult to ascertain actual damages,' and where the liquidated amount [is] 'a reasonable forecast of the damages likely to occur in the event of breach.' "[12] The Restatement of Contracts uses this widely adopted test.[13]

■ Carr–Gottstein's liquidated damages clause meets the first part of our test. The liquidated damages clause in question is meant to address the aesthetic harm caused by delays in construction. In its summary judgment decision, the superior court found that "the damages caused by [Benedict's] breach are of an aesthetic nature which result in damages that are difficult to quantify, but which nonetheless require a remedial response[.]" Moreover, it is generally accepted that injuries caused by construction delays are "nearly always difficult to determine...."[14] Carr–Gottstein's liquidated damages provision thus meets the first requirement of our liquidated damages test.

Carr–Gottstein's clause also meets the second part of our test, as a $25 daily fine is "a reasonable forecast of the damages" likely to occur as a result of this covenant breach. First, because "injury caused by [construc-

tion] delay is nearly always difficult to determine," courts are strongly inclined to accept and enforce an amount agreed to in a liquidated damages provision for construction delay.[15] Furthermore, the per diem liquidated damages provision takes into account the magnitude of the breach because the temporal length of the breach in this situation affects the magnitude of the breach. One purpose of the one-year limitation on construction is protection of the subdivision's aesthetics. Lots with unfinished construction often contain work equipment, displaced earth, unfinished edifices, and other unpleasant sights. Such aesthetic blight harms the sale value of other lots within the subdivision and hampers the other lot owners' enjoyment of their property. Each additional day of unfinished construction prolongs this harm, and its magnitude, therefore, is correlated to its temporal length. In setting a per diem fee, Carr–Gottstein's liquidated damages provision attempts to reasonably forecast damages by assigning different damages to breaches of different magnitudes.

The superior court also agreed that Carr–Gottstein's $25 per diem liquidated damages clause was an attempt to ascertain approximate damages, rather than an attempt to set a penalty: "The $25 liquidated damages provision in the current case is much more in keeping with the type of provisions commonly allowed for breach of covenant claims." Because the liquidated damages provision in question meets both prongs of our test and is not a penalty, it is enforceable.

In properly applying our two-prong test, the superior court made factual determinations that suggested it would have preferred

9. *See id.*

10. RESTATEMENT (SECOND) OF CONTRACTS § 356 cmt. a (1981).

11. 11 ARTHUR LINTON CORBIN & JOHN E. MURRAY, JR., CORBIN ON CONTRACTS § 1057 (Interim ed. 1964 & Supp.2002).

12. *Zerbetz v. Alaska Energy Ctr.*, 708 P.2d 1270, 1281 (Alaska 1985) (quoting *Williwaw Lodge v. Locke*, 601 P.2d 236, 239 (Alaska 1979)).

13. RESTATEMENT (SECOND) OF CONTRACTS § 356(1) (1981); *see also* 22 AM.JUR 2D *Damages* § 690

(1988); Melvin Aron Eisenberg, *The Limits of Cognition and the Limits of Contract*, 47 STAN. L.REV. 211, 225 (1995); *Milton Constr. Co. v. State Highway Dep't*, 568 So.2d 784, 790 (Ala. 1990); *Powder Horn Constrs., Inc. v. City of Florence*, 754 P.2d 356, 365 (Colo.1988); *Brazen v. Bell Atlantic Corp.*, 695 A.2d 43, 48 (Del.1997); *Sun Ridge Investors, Ltd. v. Parker*, 956 P.2d 876, 878 (Okla.1998); *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex.1991).

14. 11 CORBIN ON CONTRACTS § 1072 (Interim ed. 1964 & Supp.2002).

15. *Id.*

to enforce the liquidated damages provision in question. The superior court apparently determined, however, that it could not enforce Carr–Gottstein's liquidated damages provision as a matter of law due to our decision in *Kalenka v. Taylor*.[16] In its ruling, the trial court stated that the liquidated damages clause in question "would be perfectly reasonable, but for the ruling in *Kalenka*." Relying on *Kalenka*, the trial court concluded that "the failure to differentiate between degrees of covenant violations is fatal to the liquidated damages provision of a covenant." The *Kalenka* and Carr–Gottstein damages clauses are similar in that they both set flat-rate per diem fees for covenant violations. *Kalenka's* holding, however, does not prohibit all flat-rate per diem damages clauses. Thus, our holding in *Kalenka* does not in itself make Carr–Gottstein's liquidated damages clause unenforceable.

*Kalenka* continues our line of cases in which we forbid punitive damages for contractual breaches.[17] Although courts generally enforce bargains according to their terms,[18] public policy limits this principle. We stated in *Kalenka* that the lack of a public policy justification for allowing punitive contractual damages prevents us from permitting such damages: "Punishment of a promisor for having broken his promise has no justification on either economic or other grounds, and a term providing such a penalty is unenforceable on grounds of public policy."[19]

We found such a penalty provision to be unenforceable in *Kalenka*, where the developer of a subdivision had executed a restrictive covenant that contained the following liquidated damages clause: "A penalty of $1000.00 per day shall be assessed for unapproved construction."[20] In affirming the trial court's dismissal of this liquidated damages clause, we observed two troubling aspects of the clause. First, we noted that the clause was, on its face, a penalty provision: "We ... are inclined to disallow the 'penalties' sought by the Kalenkas based on their moniker alone."[21] Second, we were concerned that the $1,000 per day penalty failed to distinguish between types of contractual breaches. While discussing this second point in *Kalenka*, we reaffirmed our previous treatment of liquidated damages clauses by holding that a liquidated damages clause is invalid when there is no attempt to forecast actual damages.[22] We added that "[a]n indication of this lack of calculation is deemed present when the amount of stipulated damages is the same for a total or partial breach, or for breach of minor or major contract provisions."[23]

We distinguish Carr–Gottstein's liquidated damages clause from that in *Kalenka* in two ways. First, Carr–Gottstein does not describe the CC & R's liquidated damages clause as a penalty provision. Second, and more importantly, Carr Gottstein's $25 per diem provision is substantively different from *Kalenka's* $1,000 per diem penalty. When we disapproved of the $1,000 per day penalty in *Kalenka*, we were not frowning on the flat-rate per diem aspect of the clause. In fact, we have recognized the validity of flat-rate liquidated damages for per diem violations: "[T]here is no legal objection to stating liquidated damages in terms of a per diem percentage of the contract price or in terms of a stated sum per day...."[24] Additionally, as

16. 896 P.2d 222 (Alaska 1995).

17. *See, e.g., Lee Houston & Assocs. v. Racine*, 806 P.2d 848, 856 (Alaska 1991) (reiterating that punitive damages only available if conduct constituting breach also constitutes independent tort); *ARCO Alaska, Inc. v. Akers*, 753 P.2d 1150, 1153 (Alaska 1988) (same).

18. Melvin Aron Eisenberg, *The Limits of Cognition and the Limits of Contract*, 47 Stan. L.Rev. 211, 211 (1995).

19. *Kalenka*, 896 P.2d at 229 (quoting Restatement (Second) of Contracts § 356 cmt. a (1981)); *see also* 22 Am Jur.2d *Damages* § 686 (1988).

20. *Kalenka,* 896 P.2d at 229.

21. *Id.*

22. *Id.*

23. *Id.* (quoting *Unified Sch. Dist. No. 315 v. DeWerff,* 6 Kan.App.2d 77, 626 P.2d 1206, 1209 (1981)).

24. *Arctic Contractors, Inc. v. State of Alaska,* 564 P.2d 30, 49 (Alaska 1977), *disapproved of on an unrelated matter by Native Alaskan Reclamation & Pest Control, Inc. v. United Bank Alaska,* 685 P.2d 1211, 1219 (Alaska 1984).

noted above, the magnitude of the breach in this case is directly linked to its temporal length; consequently, the flat-rate per diem damages provision assigns different damages to different levels of breach.

Rather than criticizing the flat-rate per diem aspect of *Kalenka's* penalty provision, we reasoned that the $1,000 liquidated damages provision was flawed because it assigned a high penalty to all breaches, whether they were major or minor. For example, "an unapproved alteration to a fence calls for the same penalty as the unapproved construction of a building." [25] Liquidated damages provisions are meant to compensate and not to punish, and it is hard to imagine that an unapproved alteration to a fence could justify daily compensation of $1,000. In other words, it was the disproportionately high penalty, not the flat-rate per diem aspect of *Kalenka's* liquidated damages clause, that we found problematic. In assigning a high flat-rate per diem penalty, the Kalenkas did not attempt to forecast actual damages; rather, they attempted to maximize a penalty.

The $25 per diem damages clause in this case is different. As the superior court noted, "[u]nlike the current situation, the provision at issue in *Kalenka* was a penalty provision rather than a damages provision and the amount provided was quite extreme." The superior court clearly made the factual determination that, instead of asserting a high, penalty-like per diem charge for any violation, Carr–Gottstein incorporated a legitimate damages provision into its subdivision covenant. This finding was not clearly erroneous.

## V. CONCLUSION

Because *Kalenka* does not prohibit reasonable flat-rate per diem liquidated damages clauses and because the superior court recognizes Carr–Gottstein's clause as a reasonable liquidated damages clause, we REVERSE the court's grant of summary judgment to Benedict and order the superior court to grant Carr–Gottstein liquidated damages.

---

**25.** *Kalenka v. Taylor,* 896 P.2d at 229 (internal quotations omitted).