Lynn W. RILL and Evelyn Rill, Appellants,

v.

STATE of Alaska, DEPARTMENT OF HIGHWAYS, Appellee.

No. 7221.

Supreme Court of Alaska.

Sept. 9, 1983.

Peter C. Connick, Choate & Connick, Fairbanks, for appellants.

Bruce Tennant, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

OPINION

PER CURIAM.

The single issue presented in this appeal is whether the superior court abused its discretion in denying the plaintiffs' Civil Rule 60(b) motion to set aside the judgment entered in this action. For the reasons set forth below, we conclude that the court did not abuse its discretion and we accordingly affirm the judgment.

In 1971, the state constructed a portion of the Funny River Road across the property of the plaintiffs, Lynn and Evelyn Rill. The Rills eventually sued the state for inverse condemnation. A settlement conference was scheduled for October 5, 1981, and, in the event that did not resolve the case, trial was set for November 12, 1981.

Irwin Ravin, attorney for the Rills, suffered excruciating back pains on October 1, 1981, resulting from a ruptured intervertebral disc. He decided to seek medical treatment in Canada for his condition. Nonetheless, Ravin participated in the settlement conference on October 5. No settlement

was reached. Ravin did not inform the court of his illness and stated that he would be ready to proceed to trial on November 12. By that date, he had left for Canada and did not return until November 14.

On November 12, the state appeared before the court, ready for trial. Ravin did not appear and had not contacted the court to request a continuance. His clients also did not appear. Lynn Rill was working on the North Slope at that time, and Evelyn Rill was en route from Georgia to Fairbanks. They had contacted Ravin in October and had been assured that he would represent them at the trial.

The only issue to be litigated at trial was the value of the property taken from the Rills by the state. The state was prepared to offer expert testimony as to the value of the property. The superior court decided to proceed with the trial and received this testimony. Based upon the evidence presented, a judgment was subsequently entered awarding the Rills $1,350.00 plus interest as compensation for the taking of their property.

In late November or early December, the Rills contacted another law firm, the Law Offices of Mark C. Choate. The Rills asked Choate to contact the state and determine what had happened at the trial because they had been unable to reach Ravin. Choate discovered that Ravin had not appeared at the trial. He advised the Rills on December 2, 1981, to contact Ravin immediately and have him seek relief from the judgment under Civil Rule 60(b). Ravin could not be or was not contacted until sometime in March 1982. At that time, Choate substituted as counsel for the Rills and reviewed their file. Choate finally filed a motion for relief from judgment on May 5, 1982.

On September 3, 1982, the superior court denied the Rills' motion for relief from judgment. From this decision, the Rills appeal.

The Rills contend that the judgment entered for them should be set aside pursuant to Civil Rule 60(b). This rule provides in part as follows:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken.

In their motion filed with the superior court, the Rills argued that the judgment should be set aside because Ravin's failure to appear at trial constituted "mistake, inadvertence, surprise or excusable neglect." They submitted an affidavit by Ravin, in which he stated that his failure to appear was excusable neglect because his excruciating back pains prevented him from preparing for the trial or arranging for a continuance of the trial.

The superior court denied the Rills' motion for two reasons. First, it concluded that Ravin's failure to appear was not the result of a mistake, inadvertence, surprise or excusable neglect. Second, it concluded that the motion had not been brought within a reasonable time following the entry of the judgment.

█ As we have stated in the past, the grant or denial of a motion brought under

Civil Rule 60(b) is within the discretion of the court. We will not reverse a decision unless we are left with the firm and definite conviction on the whole record that the court was mistaken. *Gregor v. Hodges,* 612 P.2d 1008, 1010 (Alaska 1980). In this case, we are not left with such a conviction.

There is no evidence suggesting that Ravin's failure to appear at the trial was the result of mistake, inadvertence or surprise. As indicated, Ravin asserts that his failure was the result of excusable neglect. Ravin's illness began on October 1, 1981. Nonetheless, he was able to and did participate in the settlement conference held on October 5, 1981. It would have been prudent of Ravin to have informed the court of his condition at that time. Rather than doing so, Ravin instead assured the court that he would be ready to proceed to trial on November 12, 1981. Upon giving this assurance, Ravin left the country for medical treatment and did not return until two days after the trial. He failed to advise the court or his clients before the trial of his departure. Furthermore, upon his recovery of good health and return to the state, he still did not contact his clients or the court.

■ On the facts presented in his affidavit, we agree with Ravin that his conduct was neglectful. Civil Rule 60(b)(1), however, only authorizes the court to relieve a party from a judgment entered by the *excusable* neglect of a party or his agent.[1] Obviously, not all forms of neglect are excusable. We are not left with the firm and definite conviction that the superior court erred in concluding that Ravin's neglect was inexcusable. We do not mean to imply that an attorney's sudden illness cannot justify setting aside a judgment that was entered as a result of the illness. *See Bibeau v. Northeast Airlines, Inc.,* 429 F.2d 212 (D.C.Cir.1970). What makes Ravin's conduct inexcusable in this case is that he clearly had the time and ability to contact either the court or his clients and make adequate arrangements for the trial that was scheduled to take place forty-three days after the onset of his condition. An attorney's failure to act responsibly toward his or her clients *when the attorney reasonably could be expected to do so* constitutes inexcusable neglect. *See, e.g., Ben Sager Chemicals International, Inc. v. E. Targosz Co.,* 560 F.2d 805 (7th Cir.1977); *Tubman v. Olympia Oil Corp.,* 276 F.2d 581 (2d Cir. 1960); *Greene v. Pyatt,* 78 F.R.D. 362 (E.D. N.Y.1978). Inasmuch as we agree with the superior court's determination that the Rills' motion under Civil Rule 60(b)(1) was without merit, we need not consider whether the superior court was also correct in concluding that the motion was not filed within a reasonable time as required by Rule 60(b).

■ The Rills argue for the first time on appeal that the judgment entered for them should be set aside under Civil Rule 60(b)(6), which authorizes the court to relieve a party from a final judgment for "any other reason justifying relief." This argument was not raised in the superior court, and the court's failure to consider it does not amount to "plain error." Accordingly, we are unable to address the issue. *Burford v. State,* 515 P.2d 382, 383 & n. 2 (Alaska 1973); *Moran v. Holman,* 501 P.2d 769, 770 & n. 1 (Alaska 1972); *Lumbermens*

---

1. This point is apparently overlooked by Justice Rabinowitz in his dissenting opinion. He suggests that the "blameworthiness" of an attorney should not be determinative. 669 P. 2d at 577. To the contrary, an attorney acts as his or her client's agent and, to the same extent that a judgment cannot be set aside under Civil Rule 60(b)(1) unless the client's alleged negligence is excusable, a judgment cannot be set aside because of the neglect of the client's attorney unless that neglect is excusable. This rule, however, does not necessarily leave the client without a remedy. *See*

*Pew v. Foster,* 660 P.2d 447, 449 n. 1 (Alaska 1983) (Burke, Chief Justice, dissenting).

The arguments raised by Justice Rabinowitz in his dissent relate much more to Civil Rule 60(b)(6), which permits a judgment to be set aside for "any other reason justifying relief," than they relate to "excusable neglect" under Civil Rule 60(b)(1). As explained below, the issue of relief under Rule 60(b)(6) is not properly before this court. Accordingly, it is unnecessary for us to set forth our disagreements with Justice Rabinowitz's analysis.

*Mutual Casualty Co. v. Continental Casualty Co.,* 387 P.2d 104, 109 (Alaska 1963).

The judgment of the superior court is therefore AFFIRMED.

RABINOWITZ, Justice, dissenting.

I disagree with the court's conclusion that the behavior of Ravin, the Rills' attorney, did not constitute "excusable neglect" within the meaning of Alaska R.Civ.P. 60(b)(1). Furthermore, I conclude that the Rills' motion for relief from the judgment entered as a result of such neglect was timely. Therefore, I dissent from the court's holding that relief under Rule 60(b)(1) should not be granted.

A.   Excusable Neglect

According to the court, the key fact precluding a finding of "excusable neglect" in this case is that Ravin participated in a telephonic settlement conference on October 5, 1981, during which he told the court and counsel for the state that he would be ready for trial on November 12, 1981, and did not inform them of his illness. Had he fully apprised them of the facts, adverse consequences presumably could have been avoided. In essence, the majority holds that the client must suffer the consequences of the attorney's neglect if the attorney could have taken the initiative to avoid them. On the other hand, where, for example, the attorney suffers a heart attack a short time before a scheduled proceeding and thus cannot apprise anyone of his condition, *Rogers v. Sheppard,* 200 Okl. 203, 192 P.2d 643 (1948); *see also Bibeau v. Northeast Airlines, Inc.,* 429 F.2d 212 (D.C. Cir.1970) (per curiam), the client can obtain relief under Rule 60(b)(1). Under this doctrine, availability of relief seems to turn on the blameworthiness of the attorney—the more blameworthy, the less relief is available for the litigant. In my view, on the facts presented here, a distinction resting on the fault of the attorney should not be determinative.

The authority governing this question is far from consistent. While it is generally stated that the gross carelessness of an attorney is not enough to warrant relief under Rule 60(b)(1), 11 C. Wright and A. Miller, *Federal Practice and Procedure* § 2858, at 170 (1973); *Cline v. Hoogland,* 518 F.2d 776 (8th Cir.1975); *Standard Newspapers, Inc. v. King,* 375 F.2d 115 (2d Cir.1967) (per curiam); *U.S. v. Manos,* 56 F.R.D. 655 (S.D.Ohio 1972); *Transit Ads, Inc. v. Tanner Motor Livery, Ltd.,* 270 Cal. App.2d 275, 75 Cal.Rptr. 848, 852 (1969), there is authority to the contrary. *See, e.g., In re Cremidas' Estate,* 14 F.R.D. 15 (D.Alaska 1953); *Moore v. Deal,* 239 N.C. 224, 79 S.E.2d 507, 513 (1954).

Moreover, it has been held with some degree of frequency that neglect caused by an attorney's preoccupation with other matters is grounds for relief. 11 C. Wright and A. Miller, *Federal Practice and Procedure* § 2858, at 166 (1973) and cases cited; *but see Greene v. Pyatt,* 78 F.R.D. 362 (E.D.N. Y.1978). It is not clear why preoccupation with other matters is often seen as excusable neglect, as it could just as easily be seen as gross carelessness unworthy of relief.

There are two cases which are noteworthy because they deal with illness of counsel as a reason for setting aside a judgment. In *Rogers v. Sheppard,* 200 Okl. 203, 192 P.2d 643 (1948), the court permitted the re-opening of a case in which the attorney suffered a severe and completely debilitating heart attack. In *United States v. Cirami,* 563 F.2d 26 (2d Cir.1977), the court granted relief where the attorney's mental illness caused his failure to file summary judgment papers. Both cases can be distinguished from the instant case because the attorneys' illnesses in *Sheppard* and *Cirami* made their neglect truly unavoidable. Here, Ravin could have made his illness known to the court during the settlement conference on October 5, 1981, but he did not do so. However, *Sheppard, Cirami* and this case contain one important common factor: the clients, whether the victims of negligent attorney misconduct or pure inadvertence, were not in a position to avoid the

resulting adverse consequences.[1] Although the Rills were not unaware of Ravin's illness, they both telephoned Ravin's office during his absence from the country and were assured that Ravin would be present at the November 12, 1981 court proceedings. Thus, the fact that the Rills were unrepresented was entirely the fault of their attorney.

There are two basic reasons why the gross carelessness of an attorney has not been seen as "excusable neglect" within the meaning of Rule 60(b)(1). The first is that some authorities have misconstrued the term "excusable." These authorities seem to suggest that "excusable" with regard to attorney conduct should mean the type of conduct that society would otherwise not condemn or proscribe. Therefore, if severe and sudden inclement weather causes an attorney to miss a trial, that is "excusable;" if an attorney simply decides to go on a vacation and misses a trial, that is "inexcusable." In a case like this, however, where the Rills were totally unrepresented, I think it inappropriate to focus on the moral content of the attorney's conduct. Once it has been determined that the attorney's conduct in not representing his or her client may have been harmful, the focus of the court's inquiry should be on whether the likelihood of such harm warrants relief under Rule 60(b)(1). See infra note 3.

The second reason given is that "inexcusable neglect," that is, neglect caused by the knowing and deliberate failure of counsel, is part of the adversary system and should not generally be tampered with. Link v. Wabash Railroad Co., 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734, 740 (1962) ("[p]etitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts and omissions of this freely selected agent"). There is no question that the adversary system does give attorneys great responsibility and discretion in the handling of their clients' cases. Id. at 634, 82 S.Ct. at 1390, 8 L.Ed.2d at 740. Rule 60(b)(1) was not intended to allow parties to "correct" their attorneys' legal or tactical mistakes. See 11 C. Wright and A. Miller, Federal Practice and Procedure § 2858, at 170, 173 (1973). In such cases, the notion that the client "voluntarily chose th[e] attorney as his representative . . . and [therefore] cannot . . . avoid the consequences of the acts and omissions of this freely selected agent," has merit. Link v. Wabash Railroad Co., 370 U.S. at 633–34, 82 S.Ct. at 1390–91, 8 L.Ed.2d at 740. However, in cases in which the attorney has provided no representation at all, this rationale is not persuasive. Although the Rills knew Ravin was ill, they also were told consistently by Ravin and his staff that representation would be provided. It is unfair to hold that because the Rills "voluntarily chose" Ravin, they assumed or expected the "consequences" of his not representing them.

Rule 60(b)(1) can properly be read to include within the notion of "excusable neglect" instances in which an attorney wholly fails to represent the client's interests,[2]

1. In *Sheppard,* the court specifically mentioned the fact that the attorney's illness was not known to the client:

   We are committed to the rule that the abandonment of a client's cause of action by his attorney, without the knowledge of the client, constitutes "unavoidable casualty or misfortune" such as will authorize the court to vacate a default . . . .

   192 P.2d at 645. It is interesting to note that the court only required "abandonment" of the client's case, not unavoidable neglect. Ravin's conduct surely amounted to "abandonment" of the Rills' case even if it was not wholly unavoidable.

2. Generally speaking, it has been considered particularly appropriate to use Rule 60(b) to set aside default judgments, as a party has had no opportunity to present his or her case. 11 C. Wright and A. Miller, *Federal Practice and Procedure* § 2857, at 160 (1973) ("[t]here is much more reason for liberality in reopening a judgment when the merits of the case have never been considered than there is when the judgment comes after a full trial on the merits"). Here, although a decision was rendered by the superior court, the original proceeding was closer to a default than to a "full trial on the merits" because the Rills did not present their case. The Rills' situation should be seen as something akin to a default. As one case has put it:

   It is true that most of the decisions interpreting Rule 60 have been concerned with cases

assuming that the client reasonably believed that the attorney would provide such representation.[3]

### B. The timeliness of the Rills' 60(b)(1) motion.

Motions under Rule 60(b)(1) must be filed "within a reasonable time" and "not more than a year after the judgment."[4] Alaska R.Civ.P. 60(b). Judgment was entered by by the superior court on November 12, 1981, and the Rills filed their motion under Rule 60(b)(1) on May 5, 1982. In my view, the superior court erred in finding "[t]hat the motion to set aside the judgment of November 12, 1981 was not brought within the reasonable time required by the rule."

Attorney Ravin returned to Alaska on November 14, 1981, two days after the entry of judgment, and continued to neglect the Rills' case. He never contacted the court, his clients or counsel for the state. I do not consider this delay significant in itself, since Ravin was simply continuing the unprofessional behavior which I believe in this case amounts to "excusable neglect."

By mid-November 1981 the Rills had taken action on their own, by hiring another lawyer to ascertain what had happened in their inverse condemnation action. By early December 1981, the Rills' new attorney, Mark Choate, had apprised himself and the Rills of the status of the Rills' lawsuit. In late January 1982, the Rills substituted Choate as counsel, formally replacing Ravin. By March 3, 1982, Choate had obtained from Ravin relevant files and information pertaining to the Rills' case[5] as well as

---

involving default judgments. However, there is little difference between a judgment rendered without a hearing and one rendered after a hearing in which counsel for one of the litigants is in such condition as to not have the ability to properly represent his client's interests.

*In re Cremidas' Estate,* 14 F.R.D. 15, 17 (D.Alaska 1953).

**3.** For the Rills to be successful in their 60(b) motion they must show that the inability to present their case in the superior court precluded a meritorious claim. *See, e.g., Balchen v. Balchen,* 566 P.2d 1324, 1328 & n. 11 (Alaska 1977); *Markland v. City of Fairbanks,* 513 P.2d 658 (Alaska 1973). The movant need not show that the result will be different, as that would usurp the function of the trier of fact once the case is reopened and the evidence is heard. For purposes of the motion, the aggrieved party merely has "the obligation to show facts which, if established, might reasonably be said to have met the affirmative defenses of [the appellee] and constituted a basis of recovery ...." *Corso v. Commissioner of Education,* 563 P.2d 246, 248 (Alaska 1977).

Here, the Rills have advanced several reasonable arguments which, if taken as true, indicate that they have been denied "just compensation" within the meaning of Article I, section 18 of the Alaska Constitution.

The superior court did not reach the issue of whether the Rills had a "meritorious claim" because it ruled that Ravin's conduct amounted to inexcusable neglect and that the Rills' motion was not filed within a "reasonable time." Alaska R.Civ.P. 60(b), (b)(1).

**4.** Rule 60(b)(1) should not be read to override the time limitations of other civil rules. *See, e.g.,* Alaska R.Civ.P. 12(a) (20 days to file a responsive pleading); *see also Edwards v. Velvac, Inc.,* 19 F.R.D. 504 (E.D.Wis.1956) *cert. denied,* 354 U.S. 942, 77 S.Ct. 1397, 1 L.Ed.2d 1537 (1957). However, it is important to note that the time limitations in Rule 12 and other civil rules are subject to a liberal rule on defaults. *See* Alaska R.Civ.P. 55, which itself refers to Rule 60(b):

(e) Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

Alaska R.Civ.P. 55(e).

**5.** The record indicates that both Choate and the Rills had trouble obtaining the case file and information from Ravin because he was both difficult to locate and uncooperative. It was necessary for Choate to research the substantive law and the history of the case, which dated back approximately ten years, because, in addition to meeting Rule 60(b)'s other requirements, the moving party must show that a meritorious claim was precluded by the judgment. *See supra* note 3.

an affidavit from Ravin.[6] The filing of the motion two months later was clearly within the time period contemplated by Rule 60(b).[7]

6. Ravin's personal affidavit discussing the events leading up to the November 12, 1981, judgment was considered necessary because it was his conduct which was at issue.

7. The state claims that Choate unduly delayed filing the 60(b) motion. It does not appear from the record that Choate promptly filed the motion. Nevertheless, the rule does not require immediate action on the part of the aggrieved party; it merely requires that the motion be filed in a "reasonable time." As indicated in the text, the Rills have met that requirement.

It is also worth noting that "[o]ne factor the court may use to determine reasonableness is whether there was prejudice to the other party caused by the delay." *Allen v. Allen,* 645 P.2d 774, 777 n. 7 (Alaska 1982); *see also* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2866, at 228 (1973). The state was not prejudiced by the six-month delay. The underlying dispute involves the fixing of "just compensation" for the state's "taking" of the Rills' property. If the Rills prevailed they would simply obtain more money from the state; the state's investment in the property in question would not be disrupted. Thus, the state could not have relied to its detriment on the superior court judgment.