*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| CHENA OBSTETRICS & GYNECOLOGY, P.C. and DALE HARDY, CNM, | ) ) ) ) | Supreme Court Nos. S-17464/17473 (Consolidated) |
| Petitioners, | ) ) ) | Superior Court No. 4FA-17-01308 CI |
| v. | ) ) | O P I N I O N |
| LAUREN BRIDGES, on behalf of S.B., her minor child; and BANNER MEDICAL GROUP d/b/a Fairbanks Memorial Hospital and Tanana Valley Clinic, | ) ) ) ) ) ) ) ) | No. 7580 – January 21, 2022 |
| Respondents. | ) ) |  |
| BANNER MEDICAL GROUP d/b/a Fairbanks Memorial Hospital and Tanana Valley Clinic, | ) ) ) ) |  |
| Petitioner, | ) ) |  |
| v. | ) ) ) |  |
| LAUREN BRIDGES, on behalf of S.B., her minor child; CHENA OBSTETRICS & GYNECOLOGY, P.C., and DALE HARDY, CNM, | ) ) ) ) ) |  |
| Respondents. | ) ) ) |  |

Petitions for Review from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.

Appearances: Scott J. Gerlach and Max D. Holmquist, Jermain Dunnagan & Owens, P.C., Anchorage, for Petitioner and Respondent Chena Obstetrics & Gynecology, P.C. Howard A. Lazar, Delaney Wiles Inc., Anchorage, for Petitioner and Respondent Dale Hardy, CNM. John J. Tiemessen, Clapp Peterson Tiemessen & Thorsness, LLC, Fairbanks, for Petitioner and Respondent Banner Medical Group d/b/a Fairbanks Memorial Hospital and Tanana Valley Clinic. Robert John, Law Office of Robert John, Fairbanks, for Lauren Bridges, on behalf of S.B., her minor child, Respondent.

Before: Bolger, Chief Justice, Winfree, Maassen, and Borghesan, Justices. [Carney, Justice, not participating.]

BORGHESAN, Justice.

## I. INTRODUCTION

After Lauren Bridges's daughter S.B. was born severely disabled, Bridges sued the many healthcare providers involved in S.B.'s birth. When Bridges's attorneys failed to timely oppose the defendants' motions for summary judgment, the superior court granted summary judgment and then final judgment in favor of all defendants. Bridges then moved for relief from judgment under Alaska Civil Rule 60(b).[1] The

---

[1] Alaska Civil Rule 60(b) provides, in relevant part:

(b) On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

(continued...)

superior court found that her attorneys' neglect was inexcusable, precluding relief under Rule 60(b)(1), but granted relief under Rule 60(b)(6) to avoid injustice. The defendants petitioned this court for review.

We hold that the superior court did not abuse its discretion in finding the neglect of Bridges's counsel inexcusable and denying relief under Rule 60(b)(1). But we reverse the superior court's decision granting relief under Rule 60(b)(6). An attorney's neglect, whether excusable or inexcusable, cannot be grounds for relief from judgment under Rule 60(b)(6) unless the attorney abandons the client. Because that is not what the record shows, we reverse the superior court's ruling and remand for entry of judgment in favor of the defendants.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In July 2010 Lauren Bridges gave birth to S.B. at Fairbanks Memorial Hospital. S.B. was transferred to Providence Alaska Medical Center and diagnosed with hypoxic ischemic encephalopathy.[2] During her hospitalization at Providence, S.B. developed microcephaly.[3] She now has cerebral palsy, seizures, and developmental delays.

---

[1]    (...continued)

. . . .

(6) any other reason justifying relief from the operation of the judgment.

[2]    Hypoxic ischemic encephalopathy is defined as "generally permanent brain injury resulting from lack of oxygen or inadequate blood flow to the brain." STEDMAN'S MEDICAL DICTIONARY (2014).

[3]    Microcephaly means "[a]bnormal smallness of the head." STEDMAN'S MEDICAL DICTIONARY (2014).

**B. Proceedings**

**1. Initial proceedings**

In January 2017 Bridges brought a medical malpractice suit on S.B.'s behalf. Bridges alleged that negligent care during labor and delivery caused S.B.'s irreversible brain damage and resulting hypoxic ischemic encephalopathy, seizures, cerebral palsy, and developmental delays. Following procedural clarifications, the named defendants were Dale Hardy, a certified nurse-midwife who had assisted with the delivery; Hardy's employer, Chena Obstetrics and Gynecology, P.C. (Chena); and Banner Medical Group d/b/a Fairbanks Memorial Hospital and Tanana Valley Clinic (Banner).

Anchorage attorney Michele Power filed the complaint. In June the court granted permission to appear *pro hac vice* on Bridges's behalf to Michigan attorneys Todd Schroeder, Richard Counsman, and Brian McKeen.[4]

**2. Summary and final judgment**

**a. Hardy and Chena's motion for summary judgment**

In May 2018 Hardy, joined by Chena, sought summary judgment.[5] Hardy presented a nurse-midwife's expert opinion that his treatment of Bridges had met the relevant standard of care. Bridges did not file a timely opposition, and in June the court granted summary judgment in favor of Hardy and Chena.

---

[4] *See* Alaska R. Civ. P. 81(a)(2) (allowing out-of-state attorneys to appear in "a particular action or proceeding" in Alaska upon motion and court approval).

[5] Alaska R. Civ. P. 56(c) (authorizing superior court to grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law").

Bridges moved for reconsideration. She argued that Hardy's summary judgment motion "is prematurely brought before the Court and should be denied" and that "[a]s discovery progresses, [Bridges] will raise genuine issues of material fact against Mr. Hardy." Chena and Hardy opposed reconsideration, pointing out that Bridges's late-filed motion for reconsideration had "failed to present any admissible evidence to rebut the expert affidavit." The court denied reconsideration.

### b.     Banner's motion for summary judgment

In May 2018 Banner moved to compel Bridges to provide responses to Banner's discovery requests. Although the responses had been due in March, and although Banner had repeatedly inquired about the status of the responses, it still had not received them. Banner then filed a second motion to compel in June, claiming that Bridges had "served Banner with a set of severely deficient discovery responses" and had failed to respond to Banner's attempt to confer about the deficiencies. The court granted both motions to compel.

Banner then moved for summary judgment in July, relying on affidavits in which a neonatologist and an obstetrician opined that Banner's employees had met the requisite standards of care. Bridges did not timely oppose the motion, and the court granted it ten days after the deadline passed. Four days later the court processed — but did not accept for filing — Bridges's late opposition to summary judgment, which included two expert affidavits and a request for oral argument.

In August Bridges moved for reconsideration of Banner's summary judgment. Bridges also attempted to file a motion under Civil Rule 56(f) for more time to oppose summary judgment,[6] but the motion was not accepted for filing. The court

---

[6]     Alaska R. Civ. P. 56 (f) ("Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts
(continued...)

explained that Bridges had already late-filed her response to Banner's summary judgment motion, that her response had not been accompanied by a motion to accept late filing, and that judgment had already been entered by the time Bridges's response was received. Bridges then filed a motion contending that her response had been erroneously rejected by the court clerk and arguing that the court should accept her late opposition to Banner's summary judgment. After a delay caused by Bridges's improper service, Banner responded to the motion and asked that it be struck from the record.

### c. Final judgment

Chena, Hardy, and Banner all sought entry of final judgment, and in October the superior court granted final judgment in their favor. First, it noted that because over 30 days had passed since Bridges's motion for reconsideration, "that motion is taken as denied."[7] Second, the court granted Banner's motion to strike Bridges's response. Third, the court ruled that "because all of plaintiff's claims have been dismissed and relief denied, entry of final judgment is appropriate." The court issued a separate order noting that Bridges's counsel had consistently failed to comply with requirements for pleadings filed by *pro hac vice* counsel and that future non-compliant filings would be rejected.[8]

---

[6]     (...continued)
essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.").

[7]     *See* Alaska R. Civ. P. 77(k)(4) (providing that a motion for reconsideration not "ruled upon by the court within 30 days from the date of the filing of the motion . . . shall be taken as denied").

[8]     *See* Alaska R. Civ. P. 81(a)(2) (providing that if counsel appears *pro hac vice* "all documents requiring signature of counsel for a party may not be signed solely by such attorney, but must bear the signature also of local counsel with whom the

(continued...)

### 3. Civil Rule 60(b) motion for relief from judgment

On the same day final judgment was entered, Bridges sought relief from both summary judgment orders under Alaska Civil Rule 60(b).

Bridges first argued that under Civil Rule 60(b)(1) she was entitled to relief due to "mistake, inadvertence, surprise or excusable neglect." Contending that her attorneys' staff had improperly calendared the date for response to Hardy's summary judgment motion, she argued that this clerical error led to her late filing and constituted excusable neglect. Regarding her response to Banner's summary judgment motion, she argued that it was filed "only days after the deadline" and that "any neglect should be deemed excusable" because she had been waiting for notarized affidavits from her experts and had filed the response promptly once the affidavits were received.

Bridges alternatively argued that the court should grant relief under Rule 60(b)(6). Relief is available under this subsection of the rule for "any other reason justifying relief from the operation of the judgment." This ground "is reserved for extraordinary circumstances not covered by the preceding clauses" of the rule.[9] Bridges argued that extraordinary circumstances were present because "[Bridges] has the required expert support through proper affidavits to show that questions of material fact exist which would normally prevent a grant of summary judgment." Further, she argued that there would be no prejudice to the defendants because they "would then only be put in a position to have to defend a meritorious lawsuit, which . . . puts [them] in the same position they were in prior to the grant of summary judgment." After a delay caused by

---

[8] (...continued)
attorney is associated").

[9] *Hartland v. Hartland*, 777 P.2d 636, 645 (Alaska 1989).

Bridges's improper service, Banner, Chena, and Hardy each opposed the Rule 60(b) motion.

### 4.    Hearing on Rule 60(b) relief

A hearing on the Rule 60(b) motion was held in January 2019. Bridges's counsel McKeen began by describing the history of the case. He indicated that the court could take testimony from himself or from Bridges's counsel Counsman; the court directed McKeen to "[c]ontinue on as you see fit." McKeen continued to describe the case without being sworn in.

McKeen claimed that his firm's failure to timely respond to Hardy and Chena's summary judgment motion was because of differences between Michigan and Alaska procedure. In Michigan, he said, "We are used to the hearing date triggering the due date for the response." He also claimed that Power had failed to alert *pro hac vice* counsel to the motion's due date, and mentioned as a "mitigating factor" that Counsman is "essentially a single parent" who was responsible for his daughter's wedding preparations the previous August.

McKeen then addressed Banner's motion for summary judgment, emphasizing that Bridges's counsel had not received the motion until July 11 even though it was filed on July 2.[10] He indicated that it "was a matter of some considerable, you know, logistical challenge" to get notarized affidavits from plaintiff's experts "in the time frame that was required." He said that Counsman had emailed Banner's counsel to ask for additional time to respond to the motion but that Banner had declined to provide an extension, even though McKeen "would have expected" a courtesy extension. Counsman then "somehow, perhaps because of distractions with the impending wedding preparations, . . . had it in his mind that the response was due on July 27th." When

---

[10]    The record indicates that Banner's motion for summary judgment, which was filed on July 2, was returned to Banner for additional postage on July 6.

Counsman ultimately filed the response, it was "[t]echnically" "three or perhaps four days too late," which McKeen argued caused "zero prejudice." McKeen also claimed that Counsman had had three different legal assistants since the case had started and that "it is extremely difficult to hire good paralegal talent" in Detroit.

The court explained that Rule 60(b) relief is available only if the movant can show a valid argument on the merits and pointed out that Bridges still had not filed an expert affidavit to rebut Hardy and Chena's motion for summary judgment. McKeen replied that although he was new to Alaska procedure, he had "read Rule 60 over and over and over again," and did not "see where there's any provision in there that requires affidavits." He also indicated that he could provide the court an affidavit from a certified nurse-midwife "within a very short period of time." At the end of the hearing, McKeen said that if the court wished, Bridges's counsel would submit an affidavit. The court said that it would leave that to counsel's discretion.

Two days after the hearing, Bridges moved to allow the filing and consideration of a certified nurse-midwife's affidavit. The affidavit expressed the expert opinion that Hardy had violated the standard of care. The accompanying motion argued that after the court granted Hardy's motion for summary judgment, Bridges had "lacked a vehicle by which [Bridges] could submit an appropriate affidavit to the Court to show that [Bridges] could indeed show that a genuine issue of material fact exists." Bridges argued that the court should deem the affidavit timely filed under Alaska Civil Rules

6(b)(2) and 94.[11]  Chena, Hardy, and Banner opposed Bridges's motion to allow the affidavit.

### 5. Superior court's orders granting relief from judgment and defendants' petitions for review

In early April the court granted Bridges's Rule 60(b) motion as well as her motion to file the expert's affidavit.  The order held that Bridges's "claims for relief under [Alaska Civil] Rule 60(b)(1) are without merit."  Nonetheless, it concluded that relief was warranted under Rule 60(b)(6) "because of the injustice that will result if this case is not allowed to proceed on the merits."  Because the "prejudice suffered by the defendants is largely limited to the costs associated with the post-summary judgment proceedings," it could be "alleviated by an award of actual reasonable attorney's fees and costs assessed under Rule 95(a)."  The court therefore granted Bridges's Rule 60(b) motion and allowed her to oppose the defendants' motions for summary judgment.  It also ordered that a hearing be held to address sanctions against Bridges's attorneys.  Chena, Hardy, and Banner moved for reconsideration, which the court denied.

Hardy, Chena, and Banner petitioned for review of the order granting Bridges's Rule 60(b) motion, and we granted review.

## III.   STANDARD OF REVIEW

"A trial court's ruling on an Alaska Civil Rule 60(b) motion is reviewed for abuse of discretion; it will not be disturbed unless we are left with 'the definite and firm

---

[11]     Alaska R. Civ. P. 6(b) ("[T]he court for cause shown may at any time in its discretion . . . (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect . . . ."); Alaska R. Civ. P. 94 (providing rules "may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice").

conviction on the whole record that the judge ha[s] made a mistake.' "[12]  "We review de novo issues concerning the interpretation of civil rules, adopting the rule of law that is most persuasive in light of precedent, policy and reason."[13]

## IV.  DISCUSSION

The superior court denied relief under Rule 60(b)(1) but granted relief under Rule 60(b)(6).  Hardy, Chena, and Banner argue that the superior court abused its discretion by granting relief under Rule 60(b)(6); Bridges responds that we may affirm on the alternative ground that the superior court abused its discretion by not granting relief under Rule 60(b)(1).[14]  To address these issues in a logical sequence, we first consider Rule 60(b)(1), then Rule 60(b)(6).

### A.    The Superior Court Did Not Abuse Its Discretion By Refusing To Grant Relief Under Rule 60(b)(1).

Bridges argues that the superior court erred by failing to grant relief under Rule 60(b)(1), which permits the court to grant relief from judgment due to "mistake,

---

[12]    *Williams v. Williams*, 252 P.3d 998, 1004 (Alaska 2011) (alteration in original) (quoting *Thomas v. Thomas*, 581 P.2d 678, 679 (Alaska 1978)).

[13]    *Bravo v. Aker*, 435 P.3d 908, 912 (Alaska 2019) (quoting *Cooper v. Thompson*, 353 P.3d 782, 786 (Alaska 2015)).

[14]    Bridges also argues that we may affirm the superior court's decision on the alternative ground that it erred by denying her requests under Rule 56(f) for a continuance to obtain affidavits supporting her opposition to summary judgment. Although generally true that we may affirm the superior court on any ground evident in the record, *Gilbert M. v. State*, 139 P.3d 581, 586 (Alaska 2006), this rule does not apply here the way Bridges suggests.  Her Rule 56(f) requests were all filed and denied prior to final judgment.  But Bridges did not appeal the court's final judgment, and she thus has waived the opportunity to challenge it or any procedural rulings leading to it. Bridges instead sought relief under Rule 60(b).  The court granted her motion, and Hardy, Chena, and Banner then petitioned for our review.  Our review thus is limited to the superior court's order granting Bridges relief from final judgment under Rule 60(b)(6).

inadvertence, surprise or excusable neglect." First, she argues that her counsel's neglect was excusable. Second, she argues that even if her counsel's neglect is inexcusable, it falls within what she calls an "injustice exception" that permits relief under Rule 60(b)(1). Neither argument is persuasive.

> **1. The superior court did not abuse its discretion by finding the failures of Bridges's counsel inexcusable.**

We clarified our approach to excusable neglect under Rule 60(b)(1) in *Erica G. v. Taylor Taxi, Inc.*[15] In that case, we quoted the Second Circuit's description "of excusable neglect as a somewhat elastic concept that may encompass delays caused by inadvertence, mistake, or carelessness, at least when the delay was not long, there is no bad faith, there is no prejudice to the opposing party, *and movant's excuse has some merit*."[16] We went on to state "that to seek relief on this basis a party must show both neglect and a valid excuse for that neglect" and that "there must be a causal link between the excusable neglect and the party's failure to timely act; the failure must be *the result of* the excusable neglect."[17]

As an initial matter, no admissible evidence supports the excuses proffered by Bridges's counsel at the January 2019 hearing. Counsel's unsworn statements were not testimony.

---

[15] 357 P.3d 783 (Alaska 2015).

[16] *Id.* at 787 (emphasis in original) (quoting *LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995)). *Erica G.* adopted the same standard for excusable neglect in interpreting Alaska Civil Rules 6 and 60(b)(1). *Id*. at 787-78.

[17] *Id*. at 787 (emphasis in original) (first quoting *Coppe v. Bleicher*, No. S-13631, 2011 WL 832807, at *5 (Alaska Mar. 9, 2011); and then quoting Alaska R. Civ. P. 6(b)(2)).

But even if we consider these unsworn representations as admissible evidence, the superior court did not abuse its discretion by finding these excuses insufficient. Whether *pro hac vice* counsel missed Hardy and Chena's summary judgment motion response deadline because office staff incorrectly calendared it or counsel miscalculated it due to unfamiliarity with Alaska procedure, neither mistake excuses local counsel's failure to correct the error. And deciding to wait for expert affidavits before opposing Banner's summary judgment — i.e., knowingly missing a response deadline while waiting for the relevant evidence without asking the court for an extension — is simply no excuse at all. Counsel's explanations make discerning the actual reason for the failures difficult. In addition to claiming that counsel purposely waited for expert affidavits before opposing Banner's summary judgment, Bridges's counsel also represented that his colleague had the wrong date in mind because he was busy planning his daughter's wedding. The fact that several of these excuses were not mentioned until the hearing further supports the superior court's decision not to credit them. These inconsistent and insufficient explanations are very similar to the "shifting" and "myriad" explanations in *Erica G.*, which "undercut even those that most closely resemble excusable neglect."[18] The superior court did not abuse its discretion by holding that Bridges's attorneys' errors were not excusable.[19]

---

[18]    *Id*. at 784, 788.

[19]    Bridges contends that *Erica G.* adopts the standard for excusable neglect under federal Civil Rule 60 set forth in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993). She then analogizes to federal cases interpreting *Pioneer* to argue that her counsel's neglect was excusable. These cases do not alter the analysis, however, as even under *Pioneer*, courts must consider the proffered reason for counsel's neglect. *Id*. at 395. And the superior court did not abuse its discretion by concluding that Bridges's reasons were insufficient.

## 2. Attorney neglect that is not excusable does not warrant relief under Rule 60(b)(1), even to prevent injustice.

Bridges argues that even if her attorneys' neglect is not excusable, she is entitled to relief under Rule 60(b)(1) to avoid injustice, citing our decisions in *Erica G.*[20] and *Farrell ex rel. Farrell v. Dome Laboratories, Inc., a Division of Miles Laboratories, Inc.*[21] In *Farrell* we stated that although "an attorney's failure to advance a legal argument or claim, whether attributable to mistake, inadvertence or neglect, typically does not warrant relief," an exception is recognized "where the failure to provide relief would result in an injustice."[22] Bridges contends that this exception "would then apply in this case if the mistakes of counsel were inexcusable." But that is an incorrect reading of *Farrell*, the decisions it relied on, and *Erica G.*

In *Farrell* we supported our statement about an "exception" by citing two Seventh Circuit decisions involving *excusable* neglect.[23] In *A. F. Dormeyer Co. v. M. J. Sales & Distributing Co.* default judgment was entered after defendant's attorney timely mailed an answer to plaintiff but failed to file it with the court.[24] The appellate court vacated the entry of default, holding that the failure to file "was attributable to 'mistake' and 'excusable neglect' within the meaning of Rule 60(b)."[25] And in *Fleming v. Huebsch Laundry Corp.* the defendant stipulated to a consent judgment after being

---

[20]    357 P.3d. 783.

[21]    650 P.2d 380 (Alaska 1982).

[22]    *Id.* at 384.

[23]    *Id.* at 384 n.14.

[24]    461 F.2d 40, 41 (7th Cir. 1972).

[25]    *Id.* at 43.

misled about liability by a government agency.[26] The appellate court found grounds for vacating the judgment under Rule 60(b) "under the subdivision of excusable neglect."[27]

By citing these cases for the "exception," *Farrell* established that although an attorney's failure to advance a legal claim due to mistake, inadvertence, or neglect is usually inexcusable, in exceptional cases an attorney's neglect *may* be excusable and can therefore be grounds for relief under Rule 60(b)(1).[28] This was the case in both *Dormeyer* and *Fleming*: Even though the attorney in *Dormeyer* failed to properly serve the answer on the court and the attorney in *Fleming* failed to properly interpret the law, their conduct was nonetheless deemed excusable neglect. The *Farrell* "exception" is therefore similar to the U.S. Supreme Court's statement in *Pioneer* that "[a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' . . . is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant."[29] This reading of *Farrell* is consistent with the language of Rule 60(b)(1) itself, which refers only to "excusable neglect" and makes no exception

---

[26] 159 F.2d 581, 583 (7th Cir. 1947).

[27] *Id*. at 585.

[28] It is worth noting that this discussion in *Farrell* was dicta. We did not resolve the issue of whether relief under Rule 60(b)(1) was proper by deciding whether counsel's neglect was excusable or whether injustice existed. 650 P.2d at 384. Instead we concluded that the motion for relief under Rule 60(b)(1) was untimely because it was filed more than a year after the judgment. *Id*.

[29] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) (footnote omitted) (quoting 4A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1165, at 479 (2d ed. 1987)).

for injustice. It also explains why cases since *Farrell* have not discussed or applied an "exception" for inexcusable neglect under Rule 60(b)(1).[30]

Nor did our decision in *Erica G.* expand *Farrell* to create an "injustice exception." In *Erica G.*, after affirming the superior court's ruling that the excuses tendered by counsel were not valid, we also quoted *Farrell* in pointing out that Erica had "not carried her burden of demonstrating that . . . 'the failure to provide relief would result in an injustice.' "[31] Bridges emphasizes that we used this language only after determining that Erica's counsel's neglect was inexcusable; from this she reasons that a court may grant relief under Rule 60(b)(1) for *inexcusable* neglect if not doing so would cause injustice.

Bridges misreads *Erica G.* We stated that to succeed Erica would have had to show *both* "the existence of 'mistake, inadvertence, surprise or excusable neglect' " and "that the superior court's refusal to relieve her from the final judgment was 'manifestly unreasonable.' "[32] Our discussion of whether Erica had shown that denying relief would result in injustice pertains to that latter question. There is no indication that we intended to depart from the framework established by the rule's text and precedent by relieving the movant from having to show that the neglect was "excusable" — i.e. that

---

[30] For example, one year after *Farrell*, we held in *Rill v. State, Department of Highways*, 669 P.2d 573, 576 (Alaska 1983), that Rule 60(b)(1) could not apply when an attorney's neglect was inexcusable. Justice Rabinowitz in dissent argued for a more expansive definition of "excusable neglect," but he did not suggest that *inexcusable* neglect could be grounds for relief from judgment under Rule 60(b)(1), even to avoid injustice. *Id.* at 577-78 (Rabinowitz, J., dissenting).

[31] 357 P.3d 783, 789 (Alaska 2015) (footnote omitted) (quoting *Farrell*, 650 P.2d at 384).

[32] *Id.* (first quoting Alaska R. Civ. P. 60(b)(1), and then quoting *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 508 (Alaska 2015)).

"*movant's excuse has some merit.*"[33] The superior court did not abuse its discretion by declining to grant relief to Bridges under Rule 60(b)(1) after finding her attorneys' neglect was inexcusable.

**B.    Granting Relief Under Rule 60(b)(6) Due To Bridges's Counsels' Neglect Was Error.**

In addition to Rule 60(b)'s five specific grounds for relief, the rule permits a court to grant relief for "any other reason justifying relief from the operation of the judgment." Yet that broad language is limited by the "mutual exclusivity rule": Grounds for relief described in the first five subsections of Rule 60(b) cannot be grounds for relief under the sixth subsection.[34]

Quoting our decision in *Farrell*, the superior court reasoned that although an attorney's "mistake, inadvertence or neglect[] typically does not warrant relief" under Rule 60(b)(1), "[a]n exception to this general rule is recognized . . . where the failure to provide relief would result in an injustice." The court granted Bridges relief under Rule 60(b)(6) because of the "injustice that will result if this case is not allowed to proceed on the merits."

The superior court's reading of the *Farrell* decision and resulting interpretation of Rule 60(b)(6) were erroneous. Because of the rule of mutual exclusivity, garden-variety attorney mistakes and inexcusable neglect that do not merit relief under Rule 60(b)(1) cannot support relief from judgment under Rule 60(b)(6). And although attorney neglect so gross as to constitute abandoning the client might be grounds for relief under Rule 60(b)(6), the record in this case does not support relief on this theory. We therefore reverse the grant of relief from judgment under Rule 60(b)(6).

---

[33]     *Id.* at 787 (emphasis in original) (quoting *LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995)).

[34]     *See Farrell*, 650 P.2d at 385.

**1.    We did not hold in *Farrell* that relief for attorney neglect is available under Rule 60(b)(6) to avoid injustice.**

Our *Farrell* decision does not authorize relief from judgment under Rule 60(b)(6) for inexcusable attorney neglect, even to avoid injustice. Our reference to injustice in that case pertained only to Rule 60(b)(1).[35] This is clear from our refusal to entertain relief on that ground because the motion was not filed within a year of the judgment from which relief was sought[36] — a limit that applies to Rule 60(b)(1), but not Rule 60(b)(6).[37]

Moreover, in *Farrell* we expressly declined to consider whether the attorney's neglect justified relief under subsection (b)(6) because of the mutual exclusivity rule. "It is well settled that clause (6) and the first five clauses of Rule 60(b) are mutually exclusive. Relief under clause (6) is not available unless the other clauses are inapplicable."[38] We reasoned that the attorney's neglect "may have been cognizable under clause (1) had [a] motion for relief been filed in a timely fashion."[39] Because the movant did not point to anything suggesting "something more than one of the grounds stated in the first five clauses," we concluded that "[t]he mutual exclusivity rule therefore bar[red] relief under clause (6)."[40] Although *Farrell* does not rule out the possibility of

---

[35]    *Id.* at 384-85.

[36]    *Id.* at 384.

[37]    *See* Alaska R. Civ. P. 60(b) ("The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the date of notice of the judgment . . . .").

[38]    *Farrell*, 650 P.2d at 385 (footnote omitted).

[39]    *Id.*

[40]    *Id.* (quoting 11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND
(continued...)

relief under Rule 60(b)(6) for attorney neglect, it certainly does not hold that relief for attorney neglect *is* available under that rule to avoid injustice.

### 2. Bridges is not entitled to relief under Rule 60(b)(6).

The petitioners argue that attorney neglect is *never* grounds for relief from judgment under Rule 60(b)(6) due to the mutual exclusivity rule. As explained above, we held in *Farrell* that "[r]elief under clause (6) is not available unless the other clauses are inapplicable,"[41] and we have applied this rule consistently in our decisions.[42]

Bridges argues that we should adopt an approach taken by several federal courts holding that gross attorney neglect may be grounds for relief under subsection (b)(6). Although federal courts recognize the mutual exclusivity rule when interpreting the analogous federal rule, several circuit courts have also held that gross attorney neglect may be grounds for relief under subsection (b)(6). Chena and Hardy argue that our precedents explicitly *exclude* the possibility of relief based on attorney neglect under subsection (b)(6), no matter what variety. But we have not applied the mutual exclusivity rule in such airtight fashion.[43]

---

[40]     (...continued)
PROCEDURE, § 2864 ,at 220 (1973)).

[41]     *Id.*

[42]     *See, e.g.*, *Williams v. Crawford*, 982 P.2d 250, 255 n.16 (Alaska 1999) ("Although clause six is a 'catch-all' provision, relief under clause six is not available unless the other clauses are inapplicable."); *Hartland v. Hartland*, 777 P.2d 636, 645 (Alaska 1989) ("Relief under clause (6) is not available unless the other clauses are inapplicable."); *O'Link v. O'Link*, 632 P.2d 225, 229 (Alaska 1981) ("Clause (6) is reserved for extraordinary circumstances not covered by the preceding clauses.").

[43]     In two unpublished cases, we have directly stated that Rule 60(b)(6) relief is excluded by the mutual exclusivity rule even in cases of inexcusable attorney neglect. In *Coppe v. Bleicher* we wrote that the plaintiff's "major complaint is that her trial
(continued...)

Some of our decisions suggest that attorney neglect can in rare circumstances be grounds for relief under Rule 60(b)(6). For example, our first case articulating the mutual exclusivity rule was *O'Link v. O'Link*.[44] Noting the mutual exclusivity rule, we analyzed under Rule 60(b)(6) the appellant's claim that he had been "ill-advised by his attorney"; finding no "extraordinary circumstances" we decided that the claim "fit[] neatly into subsection (b)(1)" and denied relief.[45] Our language left open the possibility that even if a claim falls under another subsection, relief might be available under Rule 60(b)(6) in "extraordinary circumstances."[46] Similarly, in *Hartland v. Hartland* we noted the mutual exclusivity rule before concluding that the case failed to "present an extraordinary case for relief under [subsection] (b)(6)."[47] We noted that even if there were malpractice as alleged, it was "highly questionable" whether that

---

[43]    (...continued)
attorney performed incompetently; this claim falls under Civil Rule 60(b)(1) and precludes relief under Civil Rule 60(b)(6)." No. S-13631, 2011 WL 832807, at *7 (Alaska Mar. 9, 2011). We were even more explicit in *Coty v. Century Enterprises, Inc.*: " '[A]n attorney's failure to act responsibly towards his or her clients when the attorney could be expected to do so constitutes inexcusable neglect' for which the aggrieved client may not seek relief from judgment under Rule 60(b)." No. S-8471, 1999 WL 33958776, at *1 (Alaska Sept. 29, 1999) (alteration in original) (quoting *Hartland*, 777 P.2d at 645). As unpublished cases, however, *Coppe* and *Coty* do not have precedential value. *See* Alaska R. App. P. 214(d). And we have not explicitly held that relief is unavailable for inexcusable attorney neglect under Rule 60(b) in any published cases.

[44]    632 P.2d at 229.

[45]    *Id*. at 229-30.

[46]    *Id*.

[47]    777 P.2d at 645.

"appreciably affected the result."[48] Our language again left open the possibility of relief under Rule 60(b)(6) in an "extraordinary case."[49]

Other decisions suggest attorney neglect may be grounds for relief under only subsection (b)(1). In *Neilson v. Neilson* a father moved for 60(b) relief from a child custody agreement, citing "bankruptcy, poverty, medical conditions, and his attorneys' performance."[50] Analyzing his claims under Rule 60(b)(6), we wrote that the factors the father cited, "and especially any neglect on his attorneys' part, fall under the first clause of the Rule 60(b) umbrella: mistake, inadvertence, surprise or excusable neglect."[51] Noting that Rule 60(b)(1) relief was time-barred, we concluded "that the superior court did not abuse its discretion in denying [the father's] motion for relief under Rule 60(b)(6)."[52] This case is not directly on point because we were not presented with an argument that inexcusable attorney neglect could be cognizable under Rule 60(b)(6).

Our decision in *Rill v. State, Department of Highways* touches on the issue of gross neglect by an attorney but, contrary to Bridges's suggestion, does not resolve it.[53] In that case, Justice Rabinowitz disagreed with the court's definition of "excusable neglect" and offered his own definition: "Rule 60(b)(1) can properly be read to include within the notion of 'excusable neglect' instances in which an attorney wholly fails to represent the client's interests, assuming that the client reasonably believed that the

---

[48]    *Id*.

[49]    *Id*.

[50]    914 P.2d 1268, 1270-72 (Alaska 1996).

[51]    *Id.* at 1272.

[52]    *Id.*

[53]    669 P.2d 573, 575-76 (Alaska 1983).

attorney would provide such representation."[54] The *Rill* majority addressed the dissent in a footnote: "The arguments raised by Justice Rabinowitz in his dissent relate much more to Civil Rule 60(b)(6), which permits a judgment to be set aside for 'any other reason justifying relief,' than they relate to 'excusable neglect' under Civil Rule 60(b)(1)."[55] Bridges claims that this footnote is equivalent to a holding that Justice Rabinowitz's definition of excusable neglect "would provide a basis for relief under Civil Rule 60(b)(6)." We disagree. The court did not endorse that standard for relief under subsection (b)(6). In fact it expressed skepticism that gross attorney neglect would be appropriate grounds for relief under that subsection.[56] But because the parties did not invoke subsection (b)(6) in seeking relief, the court did not definitively answer this question.

Looking to federal law, we observe that the majority of circuit courts that have addressed this issue recognize gross attorney misconduct as a grounds for relief under Federal Rule of Civil Procedure 60(b)(6).[57] The Third, Sixth, Ninth, and D.C.

---

[54]    *Id.* at 578-79 (Rabinowitz, J., dissenting) (footnote omitted).

[55]    *Id.* at 576 n.1 (majority opinion).

[56]    *Id.* (stating that "it is unnecessary for [us] to set forth our *disagreements* with Justice Rabinowitz's analysis" (emphasis added)).

[57]    Chena and Hardy argue that Bridges has waived this argument by failing to raise it before the superior court. We disagree. Bridges argued that she was entitled to Rule 60(b)(6) relief in her initial Rule 60 motion to the superior court. She now cites federal precedent to rebut the petitioners' counterargument that Rule 60(b)(6) relief is unavailable due to the mutual exclusivity rule. Bridges's failure to anticipate and rebut this counterargument in her opening Rule 60 motion does not preclude her from responding to the argument now.

Circuits have all joined this line of cases,[58] while the Seventh and Eighth Circuits have explicitly declined to do so.[59] The Ninth Circuit's decision in *Community Dental Services v. Tani* is representative of the majority rule, holding that "where the client has demonstrated gross negligence on the part of his counsel, a default judgment against the client may be set aside pursuant to Rule 60(b)(6)."[60] The court reasoned:

> First, [Rule 60(b)(6)] is remedial in nature and thus must be liberally applied. Second, judgment by default is an extreme measure and a case should, "whenever possible, be decided on the merits." Additionally, our holding makes common sense, as is evident from the facts in the case before us. When an attorney is grossly negligent, as counsel was here, the judicial system loses credibility as well as the appearance of fairness, if the result is that an innocent party is forced to suffer drastic consequences.[61]

Our precedents express similar principles. Like the Ninth Circuit, we have held that "Rule 60(b) in general, and clause (6) in particular, should be liberally construed to enable courts to vacate judgments whenever such action is necessary to

---

[58] *See, e.g.*, *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1169 (9th Cir. 2002); *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 195 (6th Cir. 1986); *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 978 (3d Cir. 1978); *L.P. Steuart, Inc. v. Matthews*, 329 F.2d 234, 235 (D.C. Cir. 1964).

[59] *See Dickerson v. Bd. of Educ.*, 32 F.3d 1114, 1118 (7th Cir. 1994) ("Indeed, this court has recently held that counsel's negligence, whether gross or otherwise, is never a ground for Rule 60(b) relief."); *Heim v. Comm'r*, 872 F.2d 245, 248 (8th Cir. 1989) (concluding errors committed by an attorney, "even accepting the designation of gross negligence, do not constitute an adequate showing of 'exceptional circumstances,' " and therefore do not warrant relief).

[60] 282 F.3d at 1169.

[61] *Id.* at 1169-70 (citations omitted) (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)).

accomplish justice."[62]  We too have observed that "[t]he law favors deciding cases on their merits."[63]  And we agree with the Ninth Circuit that holding the client responsible for the neglect of an attorney who effectively abandoned her undermines the credibility of the legal system.  For these reasons, we do not rule out the possibility that gross neglect by an attorney may justify relief from judgment under Rule 60(b)(6).

We hold, however, that to warrant relief under Rule 60(b)(6) gross attorney neglect must rise to the level of abandoning the client.  To allow relief under Rule 60(b)(6) for attorney neglect merely because it is gross (as opposed to ordinary) would be inconsistent with the principle that the attorney is the client's agent,[64] negate Rule 60(b)(1)'s express terms providing that only "excusable" neglect is grounds for relief from final judgment, and run counter to the mutual exclusivity rule.  In *Tani*, for instance, counsel failed to file a timely answer, failed to serve the answer on opposing counsel, failed to obey a court order to serve the answer and to call opposing counsel, and failed to file an opposition to the resulting motion for a default judgment.[65]  The Ninth Circuit concluded that counsel had "virtually abandoned his client by failing to proceed with his client's defense despite court orders to do so."[66]  Such abandonment is

---

[62]     *O'Link v. O'Link*, 632 P.2d 225, 230 (Alaska 1981).

[63]     *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 204 P.3d 1023, 1029 (Alaska 2009) (quoting *Sheehan v. Univ. of Alaska*, 700 P.2d 1295, 1298 (Alaska 1985)).

[64]     *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962) (noting that the client "voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent").

[65]     282 F.3d at 1166-67.

[66]     *Id.* at 1170; *see also* 12 JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 60.48[4][b] (3rd ed. 2016) (stating that relief for inexcusable neglect should ordinarily not be available under federal Rule 60(b)(6) but that "[a] different situation is

(continued...)

a prerequisite for relief based on attorney neglect under Rule 60(b)(6). As Justice Rabinowitz wrote in his dissenting opinion in *Rill*, in most cases "the client 'voluntarily chose th[e] attorney as his representative . . . and [therefore] cannot . . . avoid the consequences of the acts and omissions of his freely selected agent.' "[67] But that rationale is unpersuasive "in cases in which the attorney has provided no representation at all."[68] The kind of attorney conduct that is grounds for relief under Rule 60(b)(6) must be different not only in degree but also in kind from garden-variety neglect, whether excusable or inexcusable.

The record in this case does not establish abandonment that can justify relief from judgment. Bridges's attorneys failed to oppose Chena and Hardy's summary judgment request, but moved for reconsideration shortly after it was granted and opposed Chena's motion for final judgment. They failed to respond to Banner's first set of discovery requests until compelled, but did ultimately respond, albeit with "severely deficient" responses. They were late in opposing Banner's summary judgment motion and requested an extension of time to oppose summary judgment, but then moved for relief under Rule 60. It is true that many of these filings were late, improperly served, or lacked necessary signatures under Rule 81(a)(2). But this record suggests that Bridges's attorneys failed to understand both Alaska's procedural rules and its substantive framework for medical malpractice; it does not suggest that they abandoned

---

[66] (...continued)
presented, however, when an attorney abandons his or her client without notice; having severed the principal-agent relationship, the attorney no longer acts, or fails to act, as the client's representative" and that [a]bandonment leaves the client responsible for his or her own conduct, but not for the attorney's conduct").

[67] *Rill v. State, Dep't of Highways*, 669 P.2d 573, 578 (Alaska 1983) (Rabinowitz, J., dissenting) (alterations in original) (quoting *Link*, 370 U.S. at 633-34).

[68] *Id.*

their client. Bridges's attorneys did not cease acting as her agent. Rather, they acted as her agent, but did so unsuccessfully. This performance does not justify relief under Rule 60(b)(6).[69] Bridges's remedy is not relief under Rule 60(b), but an action against her attorneys.[70]

## V.    CONCLUSION

We therefore REVERSE the superior court's decision granting Bridges relief from judgment and REMAND for entry of judgment in favor of the defendants.

---

[69]    Banner also argues that 60(b)(6) relief is unavailable because Bridges deliberately waited to respond to Banner's motion for summary judgment until she had received expert affidavits. Because we reverse on a different ground, we need not reach this argument.

[70]    *See Rill*, 669 P.2d at 576 n.1.